UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| vs.   ) | 4:18-cr-00975-CDP (JMB) |
| ) | |
| DUSTIN BOONE,   ) | |
| CHRISTOPHER MEYERS, and   ) | |
| STEVEN KORTE,   ) | |
| ) | |
| Defendants.   ) | |

**DEFENDANT KORTE'S MOTION TO DISMISS
FOR FAILURE TO PRESERVE EVIDENCE**

COMES NOW Defendant, Steven Korte, by and through undersigned counsel, pursuant to Federal Rules of Criminal Procedure 12(b)(2) and (3)(a), and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and respectfully requests this Court dismiss all charges in the above-styled case because the St. Louis Metropolitan Police Department failed to preserve materially exculpatory and potentially exculpatory evidence.

I.  **Statement of Facts**

On December 12, 2019, a superseding indictment (the "indictment") was issued in this case, charging Korte and two other law enforcement defendants with crimes related to the St. Louis Metropolitan Police Department's ("SLMPD") response to protests resulting from Officer Stockley's acquittal in September 2017. Count I of the indictment alleges that all three defendants, including Korte, "while aiding and abetting each other, and others, while acting under color of law, willfully deprived L.H. of the right to be free from unreasonable seizure, . . . which includes the right to be free from unreasonable force" and that the alleged actions "resulted in bodily injury to L.H." Count III alleges that Korte "did willfully and knowingly make materially false, fictitious, and fraudulent statements to a Special Agent of the Federal

Bureau of Investigation (FBI) concerning facts material to [the actions alleged in Count I] . . . ." When interviewed, Defendant Korte informed FBI interviewers that he had not been involved in the arrest of L.H. on September 17, 2017.

Although there were surveillance cameras in the area of L.H.'s arrest near 14th and Olive, the cameras did not capture his arrest. (EDMO 0061279). There is pole camera footage showing L.H. near the library before his arrest and then footage of him in handcuffs. *Id.* When L.H. was interviewed by government agents, he reviewed footage from a surveillance camera located at 14th and Olive. (EDMO 0061245). L.H. stated that he believed the camera was intentionally moved so as to not capture his arrest. *Id.* It was his understanding that the surveillance cameras would be in "watchman mode," which is automated, on the night of his arrest; however, it appeared to L.H. after viewing the footage that the camera was actually in manual mode rather than watchman mode. *Id.*

Detectives in the Real Time Crime Center (RTCC) were monitoring surveillance cameras during the protests. (EDMO 0061079). SLMPD decided to take the surveillance cameras off "watchman mode" because it caused detectives to miss more activity than when the cameras were stationary. (EDMO 0061080). Therefore, if a camera moved on the night of L.H.'s arrest, it was moved manually by staff in the RTCC. *Id.* Multiple witnesses confirmed that officers in the RTCC had the ability to manually operate the surveillance cameras and that, if the camera moved, it was likely being operated by a person. (EDMO 0061080, 0061066, 60859). RTCC staff members were trained to capture an entire event, from start to finish. (EDMO 0061080). The video reviewed by L.H. appears positioned to capture his arrest, then jerks away to another area as officers are rushing towards his location.

## II.     Law and Argument

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *Id.,* (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The proper standard of materiality:

> must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.

*United States v. Agurs*, 427 U.S. 97, 112 (1976).

When deciding this Due Process question, the Supreme Court distinguishes between the State's destruction of, or failure to preserve, "material exculpatory" evidence and "potentially exculpatory" evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). "The Due Process Clause of the Fourteenth Amendment . . . makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant *material exculpatory evidence*." *Id.* at 57 (emphasis added). However, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* The state's destruction of, or failure to preserve, potentially exculpatory evidence is not a denial of due process unless the defendant can show bad faith on part of the State. *Id.* at 58; *see also United States v. Iron Eyes*, 367 F.3d 781, 786 (8th Cir. 2004) (Government's failure

3

to preserve "potentially useful evidence" does not violate due process unless a criminal defendant can show bad faith on the part of the police).

Courts have found a due process violation even where the investigator never actually possessed the exculpatory evidence. *See United States v. Zaragoza-Moreira*, 780 F.3d 971, 980 (9th Cir. 2015), In *Zaragoza-Moreira*, the court remanded defendant's case for dismissal where the government failed to collect or preserve video from the Port of Entry that was supportive of defendant's duress defense. *Id.* The court found a due process violation based on the failure to collect the video. *Id.*

### III. The Surveillance Video that the SLMPD Failed to Preserve was Materially Exculpable

Evidence is "materially exculpatory" when it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489 (citing *Agurs*, 427 U.S. at 109-110).

Here, the video surveillance evidence that was not recorded had apparent exculpatory value. The video surveillance would have clearly resolved whether Defendant Korte was involved in the arrest of L.H. Moreover, video evidence would provide compelling proof that Defendant Korte was not involved in the arrest of L.H., and played no part in any use of force in that arrest. Unlike eyewitness evidence, video evidence is undisputable and not subject to bias, ulterior motive, or fading memory. Defendant Korte, therefore, is unable to obtain comparable evidence by other reasonably available means and he is materially prejudiced by the absence of the footage. Because the SLMPD failed to preserve materially exculpable evidence of L.H.'s arrest by manually moving cameras to avoid capturing evidence of that arrest, no showing of bad faith is necessary, and Defendant Korte's Motion to Dismiss should be granted.

**IV.      Even if the Court were to Determine that the Surveillance Video is not Materially Exculpatory, but only "Potentially Useful," There is Evidence of Bad Faith in the SLMPD's Failure to Preserve Exculpatory Evidence**

Even if the Court were to determine that the surveillance video is not "materially exculpatory," but only "potentially useful," dismissal in this case is still warranted because the SLMPD acted in bad faith in failing to preserve the video evidence. Mere negligence does not constitute bad faith. *Iron Eyes*, 367 F.3d at 786 ("But the record in this case shows that, at most, the police acted negligently . . .; there was no evidence of bad faith."). However, bad faith may be found when the State acts disloyally with respect to its duties and obligations. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 216 (1985) ("Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto.") (citation and quotations omitted)); *see also United States v. Houston*, 548 F.3d 1151, 1155 (8th Cir. 2008) (refusing to find bad faith for a failure to download the video of a traffic stop where the officers were not trained on how to download video evidence and were not instructed to do so as a matter of routine). Bad faith may also be present where there is a "conscious effort to suppress" evidence with exculpatory value. *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000) (citation and quotations omitted).

Here, video surveillance of L.H.'s arrest is, at a minimum, "potentially useful" because it could show that Defendant Korte was not involved in the arrest, and SLMPD's failure to capture this video was conducted in bad faith. The detectives in the RTCC were trained to capture an entire event, from start to finish. (EDMO 0061080). In the case of L.H.'s arrest, the surveillance camera does not stay focused on the arrest, but instead moves away from the scene. (EDMO 0061279, 006124).  The surveillance cameras have multiple settings, including an automated setting, referred to as "watchman mode," and a manual setting that allows detectives to control

5

the view. (EDMO 0061245, 0061079, 0061080). SLMPD decided to take the surveillance cameras off "watchman mode" because it caused detectives to miss more activity than when the cameras were stationary. (EDMO 0061080). Therefore, if a camera moved on the night of L.H.'s arrest, it was moved manually by staff in the RTCC. (EDMO 0061080, 0061066, 60859). The SLMPD staff in the RTCC on the night of L.H.'s arrest were disloyal to their duties and obligations where they failed to capture the entire footage of L.H.'s arrest. This failure was more than mere negligence. The evidence in this matter indicates that RTCC detectives are trained to capture an entire event, from start to finish, and their failure to do so in this case appears to have been intentional.

## V.     Conclusion

Wherefore, the St. Louis Metropolitan Police Department's failure to preserve materially exculpatory evidence -- or in the alternative, its bad faith failure to preserve potentially useful evidence -- is a clear violation of Defendant's Due Process rights, and Defendant's Motion to Dismiss should be granted.

Dated: February 19, 2020                                  Respectfully submitted,

                                                                                      ROGERS SEVASTIANOS & BANTE, LLP

By:     /s/ John P. Rogers
JOHN P. ROGERS, #38743MO
Attorney for Defendant Korte
120 S. Central Avenue, Suite 160
Clayton, Missouri 63105
(314) 354-8484
Facsimile 354-8271
jrogers@rsblawfirm.com

6

**CERTIFICATE OF SERVICE**

 By signature below, I hereby certify that on February 19, 2020, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorneys Carrie Constantin and Jennifer A. Winfield.

                /s/ John P. Rogers