UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No.: S1-4:18-cr-00975-CDP (JMB) |
| | ) | |
| DUSTIN BOONE, | ) | |
| CHRISTOPHER MEYERS, and | ) | |
| STEVEN KORTE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT STEVEN KORTE'S MOTION TO SEVER DEFENDANTS
AND COMBINED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant, Steven Korte ("Defendant" or "Korte"), by and through undersigned counsel, and hereby submits the following Motion to Sever Defendants and Combined Memorandum of Law in Support:

**MOTION**

1.     On December 12, 2019, a superseding indictment [Doc. # 136] (the "indictment") was issued in this case, charging Korte and two other law enforcement defendants with crimes related to the St. Louis Metropolitan Police Department's ("SLMPD") response to protests resulting from Officer Stockley's acquittal in September 2017.

2.     The indictment charges two counts against Defendant Korte: one count of aiding and abetting, while acting under the color of law, the deprivation of L.H.'s constitutional rights (count I); and one count of making false statements (count III).

3.     The indictment itself, and the discovery in this case, includes a number of inflammatory and inculpatory statements made by co-defendants regarding the protests

and the incident referenced in the indictment. Defendant Korte made no statements of a similar character.

4.      Rule 14 authorizes a court to order separate trials of counts or defendants if there will be prejudice to a party, even if joinder is otherwise proper.

5.       Defendant Korte's trial should be severed from that of his co-defendants under Rule 14 due to prejudice that is likely to arise in a joint trial.

6.      Defendant hereby incorporates the following memorandum of law in support.

## MEMORANDUM OF LAW

### I.      INTRODUCTION

Defendant Korte's trial on counts I and III should be severed from the trial of the other defendants in the indictment because the anticipated introduction and use of inflammatory text messages and admissions from the other defendants would be substantially prejudicial to Korte. Thus, Korte's trial should be severed from his co-defendants' trial under Rule 14.

### II.      BACKGROUND

The indictment alleges three counts against three SLMPD officers arising from allegations concerning law enforcement's actions during protests after the acquittal of Officer Stockley in September 2017. Count I of the indictment alleges that all three defendants, including Korte, "while aiding and abetting each other, and others, while acting under color of law, willfully deprived L.H. of the right to be free from unreasonable seizure, . . . which includes the right to be free from unreasonable force" and that the alleged actions "resulted in bodily injury to L.H." Count III alleges that

2

Korte "did willfully and knowingly make materially false, fictitious, and fraudulent statements to a Special Agent of the Federal Bureau of Investigation (FBI) concerning facts material to a matter being investigated by the FBI, . . . "[s]pecifically . . . (1) that he had not been involved in the arrest of L.H. on September 17, 2017, when he then and there knew he had, in fact, participated in the arrest of L.H. on September 17, 2017, (2) that he had not yelled at L.H. 'Hands out!,' while participating in the arrest of L.H. on September 17, 2017, when he well knew that he did in fact give such orders to L.H., and (3) that his voice was not captured on a recording of L.H.'s arrest giving the aforementioned commands, even though he well knew his voice was on the recording, having listened to the recording, and denying the same, in the presence of an FBI agent."

### Inflammatory and Inculpatory Statements of Co-Defendants

The indictment includes several pages of inflammatory text messages from the other defendants—and not from Defendant Korte—regarding the protests, treatment of protestors, and L.H.'s arrest. [Doc. # 136, pp. 2-5]. For example, on September 15, 2017, Defendant Christopher Myers texted, "let's whoop some ass." [Doc. # 136, p. 2]. On September 17, 2017, Defendant Boone had the following text message exchange with an unnamed person: [unnamed person]: You doing ok down there with the idiots? Boone: Yeah. A lot of cops getting hurt, but it's still a blast beating people that deserve it. . . . [Doc. # 136, p. 3].

The texts in the indictment also contain inculpatory admissions by the other defendants concerning their role in L.H.'s arrest. For example, on September 19, 2017, Defendant Boone engaged in the following text message exchange about the arrest:

> [unnamed person]: Did Mysers [sic] dumb ass even reach out to LH and apologize?

> Boone: Nope, he is being typical Myers. I'll tell u his whole attitude, but basically he told me if he was running around down there w the protestors and his own personal camera and didnt tell us he was a cop, then he gets what happens to a protestor. kinda said it's on him or the department but OF COURSE nothing wrong w what he did or we did.

[Doc. # 136, p. 4]. A week later, on September 26, 2017, Defendant Boone admitted his own involvement in the arrest in another text message: Boone: "Hays, a guy involved in the LH incident, got a call tonight from the association saying to call [redacted] tomorrow so they can get out in front of this . . . . . . why would they not call me and give me a heads up too?? My actions were not the same as Hays and Myers but still." [Doc. # 136, p. 5]. Defendant Myers acknowledged his role in a text on September 25, 2017: "[unnamed person]: I know Lh do you want me to talk to him? Myers: Yea if u can I have been wanting to apologize to him personally cuss [sic] I feel bad. We obviously didn't know he was a policeman."  [Doc. # 136, p.5]. Defendant Korte is not a participant nor is he mentioned in any of these text messages exchanges cited in the indictment.

Additionally, the discovery provided by the government includes grand jury testimony from Defendant Boone's mother discussing a number of text messages to and from Boone, about the protesters. For example, he wrote the following in a group text on September 15, 2017: "I'm on Donny Walters' arrest team. Me and a big ol' black dude are the guys that are hands on. No stick or shield, just fuck people up when they don't act right. Ha ha. Donny said 'Boone, don't be getting out of control chasing people through this crowd. I'll tell your daddy.'" (US0001369). On September 16, 2017 he wrote, "[t]his shit is crazy, but its fucking awesome too except for cops getting hurt. People on the street got fucked up. LOL." (US0001372). He also wrote,  "[d]id everyone see the protestors get fucked up in the Galleria? That was awesome." (US0001380) and

"[t]onight's theme for the protests or is [sic] this open carry. Probably nothing to be worried about, but it could get to be war if somebody pops a round off." (US0001376-77). To which his mother replied, "Holy fuck. I hate niglets." *Id.*   Defendant Boone also referred to someone as "a white skinned coon" in his text messages. (US0001388). His mother's testimony also references Defendant Boone's text message to L.H. apologizing for his role in the arrest. Exhibit 1. Defendant Boone's father's testimony similarly contains an admission that Defendant Boone placed his arm on L.H.'s head during the arrest. (Exhibit 2 US0002650). Korte is not a party to, nor mentioned in, this testimony. It is anticipated that the government will attempt to introduce the statements referenced in the grand jury testimony and the indictment at trial.

### Bruton Testimony

The discovery in this case also includes grand jury testimony from Officer Martinous Walls III regarding admissions of Defendant Myers. Officer Walls testified that Defendant Myers allegedly asserted to him that "while they were on the ground, [Myers] saw [another officer] and Steve Korte hit [L.H.] with like sticks on his legs or something of that nature." Exhibit 3 at 1412.  Myers also allegedly expressed his frustration to Officer Walls about why his name was being brought up:

> [H]e was confused as to why his name was brought up. He said he never
> put hands on him, And then he goes on to say how come these other
> officers' names that were involved weren't brought up, which –
> Q. Like which ones?
> A. I think he was referring to . . . maybe Korte.

*Id.*

## III.    ARGUMENT

Rule 8(b) of the Federal Rules of Criminal Procedure establishes the requirements

for the joinder of two or more defendants in a single indictment, and provides as follows:

> The indictment or information may charge 2 or more defendants if they
> are alleged to have participated in the same act or transaction, or in the
> same series of acts or transactions, constituting an offense or offenses. The
> defendants may be charged in one or more counts together or separately.
> All defendants need not be charged in each count.[1]

Fed. R. Crim. P. 8(b). Rule 14(a) states that "[i]f joinder of offenses or defendants . . . in

an indictment, . . . appears to prejudice a defendant or the government, the court may

order separate trials of counts, sever the defendants' trials, or provide any relief that

justice requires." Rule 14 provides a mechanism for a party to sever counts if there will

be prejudice to that party, even if joinder is otherwise proper. Fed. R. Civ. P. 14(a). A

motion for severance under Rule 14 is committed "'to the district court's sound

discretion.'" *United States v. Adams*, 401 F.3d 886, 895 (8th Cir. 2005) (quoting *Zafiro v.*

*United States*, 506 U.S. 534, 538–39 (1993)); *see also United States v. Oxford*, 735 F.2d

276, 279 (7th Cir. 1984).

### A.    Hearsay Problems

In this case, the statements in the text messages made by the other defendants are

hearsay and are inadmissible against Korte, but they may be admissible pursuant to Rule

801(d) against those defendants. If presented to the jury, there is a substantial risk these

statements will be considered by the jury to prove the truth of the matter asserted with

---

[1] Rule 8(a) governs the joinder of multiple offenses. However, "[w]here an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed by Rule 8(b), rather than Rule 8(a)." *United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012). Significantly, "the language of 8(a) does not allow joinder on the same basis as 8(b); the words "same or similar character" [which are found in Rule 8(a)] are omitted from 8(b)." *Id.* Thus, the grounds for joinder under Rule 8(b) are narrower than the grounds under 8(a). *See id.*

respect to Korte, causing him prejudice.

Rule 801 of the Federal Rules of Evidence provides that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Federal Rules of Evidence, Rule 801. A number of classes of non-hearsay statements are listed in Rule 801(d), specifically:

> (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

FRE 801(d)(2).  Rule 802 provides that hearsay "is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."  Federal Rules of Evidence, Rule 802.

Korte anticipates that the statements in the text messages may be admissible against the declarants—the other defendants—under 801(d)(A). However, there is not an applicable hearsay exception that would allow admission of the other defendants' statements against Korte. No conspiracy count has been pleaded in the current indictment and there is no evidence of an unindicted conspiracy between Korte and the other defendants that would have been furthered by such text messages. Thus, the other defendants' statements would not be admissible against Korte as co-conspirator statements. *See* FRE 801(d)(2)(E).

### B.     "Spillover" Evidence

The statements of the other defendants are "spillover" evidence, likely to be prejudicial against Korte. Where there is reason to believe the jury will not be able to

isolate the evidence presented against each co-defendant and make an independent

determination of guilt with respect to each co-defendant, a Rule 14 severance is

warranted. *See, e.g., United States v. Durham*, 984 F.2d 960, 965 (8th Cir. 1993) (noting

that disparity of evidence can provide a basis for severance under Rule 14 if the

defendant is prejudiced by the jury's inability "to compartmentalize the evidence");

*United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993) (defendants must be severed if

defendant can show that a jury will not be able to (1) capably sort through the evidence

and (2) follow instructions from the court to consider each defendant separately);

*Hamilton v. United States*, 434 U.S. 1020 (1978) ("joint trials, and especially those

involving many defendants, carry substantial risks of manifest unfairness. . . . the major

burden falls upon the shoulders of the trial judge… who must be constantly aware of the

possibilities of jury confusion and guilt by implication and continually vigorous in his

efforts to forestall those effects."). The primary concern in this regard is that the jury will

impute the guilt of one or more co-defendants to another co-defendant. *See United States

v. McLaurin*, 557 F.2d 1064, 1074 (5th Cir. 1977).

"Whether the evidence is easily compartmentalized is 'of foremost importance' in

assessing if joinder were prejudicial." *United States v. Duran*, 189 F.3d 1071, 1081-82

(9th Cir. 1999) (quoting *United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir.

1994)). In exercising this discretion as to whether to grant severance, the trial court

should determine:

> whether the jury can reasonably be expected to compartmentalize the
> evidence as it relates to separate defendants in the light of its volume and
> limited admissibility. . . . Additionally, [it] must consider the complexity
> of the case, the total weight of the evidence against each defendant, and
> the effectiveness of the jury instructions. . . . Finally, [it] must be wary of
> situations where a jury might impute the guilt of some defendants to other

defendants.

*United States v. DeRose*, 670 F.2d 889, 898 (9th Cir. 1982) (internal quotations and citations omitted).

Courts have determined that severance is appropriate based on the presentation of inflammatory evidence that is irrelevant to the party seeking severance. *See U.S. v. McRae*, 702 F.3d 806 (5th Cir. 2012). In *McRae*, the court held that the trial court abused its discretion in denying a law enforcement officer severance from the trial of his co-defendant officers under Rule 14. *Id.* at 828. The court held that the evidence presented regarding the other officers—who engaged in a cover-up—was highly emotionally charged and inflammatory, irrelevant to the defendant, and impliedly implicated the defendant in an uncharged conspiracy. *Id.* 826-28. *See also United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996) (denial of defendant's motion for severance was an abuse of discretion in prosecution for aiding and abetting knowing possession of ricin, a deadly toxin, for use as a weapon where most of evidence was properly admissible only against codefendant, evidence admitted against defendant was very prejudicial and highly inflammatory, and risk of substantial prejudice from spillover effect of conspiracy evidence was too high to be cured by less drastic measures); *United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998) (holding that limiting instructions were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent activities of the gang, with which defendants were never affiliated).

Admission of the text messages against the other defendants carries the risk that the jury will impute the motives, intent, and admissions of the other defendants to Korte. The text messages contain compelling evidence of racial bias. These statements are

highly inflammatory and condone police beating protesters. This evidence does not name
or include Korte and is totally irrelevant to the case against him.  If the jurors hear these
highly inflammatory statements, there is a substantial risk that they will erroneously
assume general and widespread police misconduct from the statements of these particular
officers. There is also a substantial risk that they will assume Korte's guilt based on the
other officer's admissions. One of the admissions by Defendant Myers contains the
statement "[w]e obviously didn't know he was a policeman." This statement carries the
suggestion that other officers involved knew the arrest was improper. There is a
substantial risk that this admission will be imputed by the jury to the other officers. The
text messages, which suggest that these co-Defendants intentionally targeted protestors,
will tend to inflame the jurors' passions and cause them to make decisions in the case
based on emotion rather than on careful consideration of the evidence against each
individual officer.

Furthermore, the text messages are particularly problematic in light of the
disparity in the weight of the evidence against each defendant. The case against Korte
appears to be fundamentally based on the purported identification of his voice on a
recording of the arrest. The relevant portion of that recording consists of only a short
phrase. By contrast, the discovery and grand jury testimony contain multiple admissions
by the other defendants describing their roles in the arrest. The admissions by the other
defendants in the text messages are likely to be weighed heavily by the jury. Defendant
Korte did not make any such admissions nor is he even mentioned in the text messages of
the co-defendants admitting fault or referencing their intent to target protestors. Given
substantial differences in the weight and type of the evidence against Korte compared to

the other defendants, admission of this evidence at Korte's trial would unfairly prejudice him.

### C.    *Bruton* Concerns

The introduction of "incriminating extrajudicial statements" by a non-testifying co-defendant "violate[s] [the defendant's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton v. United States*, 391 U.S. 123, 126 (1968). The Confrontation Clause of the Sixth Amendment gives a criminal defendant the right to cross-examine witnesses against him. *See* U.S. Const., amend. 6. The Confrontation Clause applies to "testimonial statements, such as prior testimony at a preliminary hearing, former trial, or before a grand jury and statements made in the course of police interrogations." *United States v. Garth*, 540 F.3d 766, 778 (8th Cir. 2008) (*citing Crawford v. Washington*, 541 U.S. 36, 68 (2004)) (emphasis added). In *Bruton*, the Supreme Court ruled that—in a joint trial—the admission of a co-defendant's confession, which implicated the appellant, was error where the co-defendant did not testify and thus was not subject to cross-examination by the appellant. *Bruton*, 391 U.S. at 135-37. The Court further held that, even though a limiting instruction was given that the jury should not consider the confession as to the appellant, "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." *Id.* at 137.

According to Officer Walls' grand jury testimony, at least one co-defendant, Myers, has made incriminating extrajudicial statements implicating Korte. When discussing his role in the arrest, Myers also alleged that Korte was actively involved and expressed frustration that Korte and others were not getting as much attention for the

11

arrest as Myers was. Ex. 3 at 1412. If the Government chooses to introduce such statements at a joint trial in which Myers exercises his right as a criminal defendant to not testify, which Korte anticipates, then Korte will be denied his rights under the Confrontation clause to cross-examine a witness against him. *Bruton*, 391 U.S. at 137. . To ensure that such extrajudicial statements are not admitted at his trial, Korte's trial must be severed. *See United States v. Sutton*, 337 F.3d 792, 798 (7th Cir. 2003) (if one defendant's confession incriminates co-defendants, "their trials must be severed if the confession is to be used"); *United States v. Holt*, 483 F.2d 76, 77 (5th Cir. 1973) (*per curiam*) (holding that trial court abused its discretion in denying defendant's motion to sever where the Government entered into evidence certain out-of-court admissions by a co-defendant; *Bruton* "compelled severance pursuant to . . . F.R. Crim.P. 14").

This *Bruton* problem cannot be resolved by redacting portions of the statements made by Myers. It is true that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (footnote omitted). However, in a later case, the Supreme Court held that notwithstanding cautionary instructions and neutral redactions, *Bruton* is violated when the fact that a statement has been redacted is so obvious as to lead the jury through ordinary inferences directly to a defendant. *See Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("[W]e believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results.");

*see also United States v. Garcia*, 836 F.2d 385, 391 (8th Cir. 1987) (redaction permissible where "the language in the statement as testified to did not draw attention to the fact that the prosecution had the name available to it and purposely omitted it from the statement"). In fact, the Supreme Court noted that the obvious indication of alteration is accusatory. *Gray*, 523 U.S. at 194; *see also United States v. Donahue*, 948 F.2d 438, 444 (8th Cir. 1991) (citing *United States v. Long*, 900 F.2d 1270, 1280 (8th Cir. 1990)) (there can be "no improper linkage between the statement and [the defendant], nor . . . an impermissible invitation to speculate").

Here, the *Bruton* problem cannot be cured through the use of redactions or neutral references. Myers' statement is in the context of a complaint about why the other officers involved were not also receiving scrutiny, and it references specific actions done by specific officers. A redaction under those circumstances will be obvious and would impermissibly invite the jury to speculate as to the name redacted. The only effective way to ensure Korte's Sixth Amendment right to cross-examine the declarant, Myers, is to sever Korte's trial.

**D.      Adverse Inferences from Failure to Testify**

Another problem arises in a joint trial if some of the co-defendants testify, but others do not.  In such a scenario, the attorneys for the co-defendants who are testifying could, and arguably would be obligated to, comment on Defendant's failure to testify. The Fifth Circuit recognized this problem in *DeLuna v. United States*, 308 F.2d 140 (5th Cir. 1962).  A defendant who had originally not planned on taking the stand would then be faced with the unenviable choice of either testifying in his own behalf or having the jury make an adverse inference from his refusal to testify, thus effectively depriving him

of his Fifth Amendment rights.  *Id.  See also United States v. Echeles*, 352 F.2d 892, 898 (7th Cir. 1965) ("If an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately").

## IV.    CONCLUSION

The inflammatory and incriminating text messages from the other defendants raise serious concerns regarding prejudice to Defendant Korte. These statements will likely be admissible against the other defendants. Because of the prejudice to Defendant Korte that will result if the defendants are tried together and the jury hears these statements, this Court should grant Defendant Korte's motion to sever under Rule 14 and order separate trials as to Defendant Korte.

Dated: February 19, 2020                           Respectfully submitted,

ROGERS, SEVASTIANOS & BANTE, LLP


By:     /s/ John P. Rogers
        JOHN P. ROGERS, #38743MO
        Attorney for Defendant Korte
        120 S. Central Avenue, Suite 160
        Clayton, Missouri 63105
        (314) 354-8484
        Facsimile 354-8271
        jrogers@rsblawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

By signature below, I hereby certify that on February 19, 2020, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorneys Carrie Constantin and Jennifer A. Winfield.

                                                        /s/ John P. Rogers