UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No.: S1-4:18-cr-00975-CDP (JMB) |
| | ) | |
| DUSTIN BOONE, | ) | |
| CHRISTOPHER MEYERS, and | ) | |
| STEVEN KORTE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT STEVEN KORTE'S MOTION TO SUPPRESS STATEMENTS
AND COMBINED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant, Steven Korte ("Defendant" or "Korte"), by and through undersigned counsel, and moves this Court to suppress any and all statements taken during his interviews with law enforcement on or about July 25, 2018 and August 8, 2018, resulting from use of grand jury subpoena power, for the reasons that follow:

1.  Said statements were not voluntary in that:

    a.  Defendant was not free to ignore the subpoenas.

    b.  Given the circumstances, Defendant would not have felt he was free to terminate the interviews.

    c.  Defendant made statements in the interviews without being informed of his *Miranda* or related Fifth Amendment rights.

2.  Said statements were made without the Defendant first being advised of his constitutional rights, to wit:

    a.  Defendant was not advised in clear and unequivocal terms of his right to refuse to answer incriminating questions prior to his interrogation.

    b.  Defendant did not waive his Fifth Amendment rights.

And all of the matters herein mentioned were in violation of the constitutional rights of

the defendant under the Fifth Amendment and the Due Process Clause of the Fourteenth

Amendment of the United States Constitution.

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO SUPPRESS STATEMENTS

### I.     Statement of Facts

On December 12, 2019, a superseding indictment [Doc. # 136] (the "indictment")

was returned in this case, charging Korte and two other defendants with crimes related to

the St. Louis Metropolitan Police Department's ("SLMPD") response to protests

resulting from Officer Stockley's acquittal in September 2017. Count I of the indictment

alleges that all three defendants, including Korte, "while aiding and abetting each other,

and others, while acting under color of law, willfully deprived L.H. of the right to be free

from unreasonable seizure, . . . which includes the right to be free from unreasonable

force" and that the alleged actions "resulted in bodily injury to L.H." Count III alleges

that Korte "did willfully and knowingly make materially false, fictitious, and fraudulent

statements to a Special Agent of the Federal Bureau of Investigation (FBI) concerning

facts material to a matter being investigated by the FBI, . . . "[s]pecifically . . . (1) that he

had not been involved in the arrest of L.H. on September 17, 2017, when he then and

there knew he had, in fact, participated in the arrest of L.H. on September 17, 2017, (2)

that he had not yelled at L.H. 'Hands out!,' while participating in the arrest of L.H. on

September 17, 2017, when he well knew that he did in fact give such orders to L.H., and

(3) that his voice was not captured on a recording of L.H.'s arrest giving the

aforementioned commands, even though he well knew his voice was on the recording,

having listened to the recording, and denying the same, in the presence of an FBI agent."

On or about July 25, 2018, Defendant Korte was requested by federal law enforcement officers to appear before the grand jury on the basis that he had purportedly been served with a grand jury subpoena, although he had not been personally served with a subpoena at that point. However, rather than being questioned before the grand jury, he was taken into a separate room in the courthouse to meet with, and be interviewed by, three government attorneys and two FBI agents. He was not told that he was free to leave, but instead understood that he was compelled to remain due to the grand jury subpoena. During that interview, he answered a number of questions about the events of September 17, 2017. The FBI-302 report memorializing his statement indicates, in particular, that Korte informed the investigators that he did not make any arrests on that evening, and that he did not have any knowledge about what happened to L.H.

After his interview concluded, Defendant Korte was served with a subpoena to appear before a grand jury in early August, 2018. Because he was scheduled to be out of town on the date provided on the subpoena, Defendant Korte was informed that he should come in to satisfy the subpoena on or about August 8, 2018.

When he arrived at the courthouse, pursuant to the subpoena, rather than being questioned before the grand jury, he again was taken into a separate room in the courthouse to be interviewed by two of the government's attorneys and an FBI agent. He was not told that he was free to leave, but understood that he was compelled to remain due to the outstanding grand jury subpoena. During the interview, Defendant Korte was played a brief audio recording from L.H.'s phone at the time of his arrest. The report of this interview indicates that Defendant Korte was asked whether his voice was on the recording and whether he was the one who said a short two-word phrase, "hands out," on

the recording, and that he answered in the negative. He was then reportedly asked if he knew why other people might have identified that two-word phrase as having been spoken by Korte, and stated that he did not know why.

The statements attributed to Defendant Korte during these interviews are pleaded as the basis of Count III of the Superseding Indictment. It appears, based on the report generated to memorialize this interview, that these questions were the only substantive questions asked of Defendant Korte at the early August interview. It therefore seems that the sole purpose of the early August interview was to alternatively: 1) collect incriminating evidence from Defendant Korte for use against him; or 2) to collect purportedly false denials from Defendant Korte to support the Section 1001 count pleaded in the superseding indictment.

## II.    Law and Argument

A confession that is "not obtained voluntarily violates the Fifth Amendment's guarantee that no person shall be compelled in any criminal case to be a witness against himself." *United States v. States*, 652 F.3d 734, 740 (7th Cir. 2011) (citing *Dickerson*, 530 U.S. at 433). Aside from deterring improper police conduct, when "involuntary statements or the right against compulsory self-incrimination are involved, a second justification for the exclusionary rule also has been asserted: protection of the courts from reliance on untrustworthy evidence." *Michigan v. Tucker*, 417 U.S. 433, 448 (1974). The test for whether a statement is voluntary is "an inquiry that examines 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession. The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the

interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting

*Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The inquiry into the

characteristics of the accused "depend[s] on the actual mindset of a particular suspect,"

that is, "whether 'the defendant's will was overborne,' a question that logically can

depend on 'the characteristics of the accused.'" *Yarborough v. Alvarado*, 541 U.S. 652,

667–8 (2004) (quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) and *Schneckloth*,

412 U.S.at 226). In reviewing the characteristics of the accused, courts have considered

the suspect's age, education, intelligence, size, and prior experience with law

enforcement. *Yarborough v. Alvarado*, 541 U.S. at 668; *Arizona v. Fulminante*, 499 U.S.

279, 286 n.2 (1991). The prosecution must prove the voluntariness of any confession by a

preponderance of evidence at a suppression hearing.  *Lego v. Twomey*, 404 U.S. 477, 489

(1972). Involuntary statements are inadmissible at trial for any purpose. *Michigan v.

Harvey*, 494 U.S. 344, 351 (1990).

A "prosecuting attorney has no obligation to give a *Miranda* warning, or advise of

a right to counsel, before taking testimony from a witness before a grand jury." *United

States v. Morse*, 07-226 PAM/JJG, 2007 WL 4233075, at *14 (D. Minn. Nov. 28, 2007),

aff'd, 613 F.3d 787 (8th Cir. 2010) (citing *In re Grand Jury Subpoena*, 97 F.3d 1090,

1093 (8th Cir.1996); *United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir.1997);

*United States v. Mandujano*, 425 U.S. 564, 579 (1976) (plurality opinion). However,

[t]he Supreme Court has not squarely resolved the question whether ***Miranda*-type**

warnings must be given to grand jury witnesses who are targets of the investigation."

*United States v. Matos*, 990 F. Supp. 141, 145 (E.D.N.Y. 1998) (emphasis added). *See

United States v. Washington,* 431 U.S. 181, 190, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977)

(because modified Miranda warnings were given to the grand jury witness, "we do not decide whether such warnings were constitutionally required").

Here, Defendant Korte was twice summoned to the courthouse under compulsion of a grand jury subpoena, and did not believe that he was free to ignore the subpoena. On both occasions, he was instead interviewed by the government's attorneys and the FBI agent. He was not told that he was free to leave or to refuse to answer their questions, and was not informed that he had the right to refuse to answer questions on grounds of his right against self-incrimination. Given these circumstances, and as a target of the grand jury investigation at issue, Defendant Korte's statements during the interview were not voluntary.

Moreover, although he was responding to a grand jury subpoena, Defendant Korte was not actually called before the grand jury. Statements gained pursuant to a grand jury subpoena but that were not actually obtained before the grand jury may constitute improper means of gathering evidence under the guise of the grand jury's authority. *See In re Melvin*, 546 F.2d at 5. A United States Attorney "may not use his subpoena powers under Rule 17 to gather evidence without the participation of the grand jury." *Id. See also United States v. Wadlington*, 233 F.3d 1067, 1075 (8th Cir. 2000) (Rule 17 "does not authorize the Government to use grand jury subpoenas to compel prospective grand jury witnesses to attend private interviews with government agents"). Defendant, therefore, seeks suppression of his statements to law enforcement because they were not voluntarily made and because they were taken by law enforcement in violation of due and proper grand jury procedure.

### III.     Conclusion

WHEREFORE, Defendant Steven Korte respectfully requests that this Court

suppress all statements made by him during his interviews on or about July 25, 2018 and

August 8, 2018 that the Government intends to present at trial.

Dated: February 19, 2020                          Respectfully submitted,

                                                  ROGERS, SEVASTIANOS & BANTE, LLP


                                        By:      /s/ John P. Rogers
                                                 JOHN P. ROGERS, #38743MO
                                                 Attorney for Defendant Korte
                                                 120 S. Central Avenue, Suite 160
                                                 Clayton, Missouri 63105
                                                 (314) 354-8484
                                                 Facsimile 354-8271
                                                 jrogers@rsblawfirm.com

### CERTIFICATE OF SERVICE

By signature below, I hereby certify that on February 19, 2020, the foregoing was
electronically filed with the Clerk of the Court to be served by operation of the Court's
electronic filing system upon Assistant United States Attorneys Carrie Constantin and
Jennifer A. Winfield.

                                                 /s/ John P. Rogers