UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:18CR00975 CDP (JMB) |
| | ) |
| STEVEN KORTE, and | ) |
| CHRISTOPHER MYERS, | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS**

Comes now the United States of America, by Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Jennifer A. Winfield, Assistant United States Attorney for said District, and in response to defendant Steven Korte's Motion to Suppress Statements and Motion to Sever, as well as co-defendants Christopher Myers and Steven Korte's Joint Motion to Dismiss the Indictment, states as follows:

**STATEMENT OF RELEVANT FACTS**

**a.  Investigation Summary**

Federal authorities opened a grand jury investigation into an incident that occurred on September 17, 2017, during protests in the City of St. Louis following the acquittal of St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley on state murder charges. The SLMPD and the City of St. Louis had notice of the impending verdict, planned their protest response, and organized its officers into response teams. Many officers, including co-defendants Steven Korte and Christopher Myers, were detailed to the Civil Disobedience Team (CDT). The

SLMPD also assigned L.H., a 22-year veteran officer, to work undercover during the protests to document criminal activity.  At the onset, the investigation revealed that other SLMPD officers, however, not knowing that L.H. was working undercover, arrested and assaulted him.  In the course of the "arrest," for which probable cause is not apparent, officers threw L.H. to the ground, pushing his face into the concrete. The officers continued to kick and hit L.H. and strike him with a riot baton. This resulted in injuries to his face and an injury to his mouth requiring stitches. L.H. sustained significant bodily injury to his neck and back that required him to undergo surgery. L.H. has not been able to return to work.

In the spring and summer of 2018, the federal grand jury investigation regarding the assault of L.H. was ongoing, and the evidence had established that several SLMPD officers were responsible for the assault on L.H.  At that time, defendant Steven Korte ("Korte") was not a target or a subject of the investigation, he was merely a possible witness. In addition, after service of a grand jury subpoena to the SLMPD in July 2018, the prosecution team was provided video footage of the area near 14th and Olive, where L.H.'s assault took place during the timeframe of the assault.

**b.**     **Steven Korte and the Grand Jury Investigation**

In September 2017, Korte was a six-year veteran of the SLMPD.  During the instant investigation, the United States obtained evidence that Korte was on duty the night of L.H.'s assault and may have observed L.H.'s assault or had information regarding what was said by other officers who witnessed or who actually assaulted L.H.

The suspected information that Korte may have had could have included inculpating admissions, evidence of consciousness of guilt, and evidence about the involvement of the target officers, one of which was co-defendant Christopher Myers ("Myers").  Therefore, at the onset of

this investigation, Korte was deemed a witness. Korte was neither a subject nor a target. Initially, there was no indication that Korte was personally involved in or present for the arrest and/or assault of L.H. In short, in the eyes of prosecutors and investigators, in 2018, Korte was merely a co-worker of the targets of this investigation who may have had information that incriminated the targets and others.

c. **Korte's July 25, 2018 Interview**

As a part of the instant investigation, agents with the Federal Bureau of Investigation contacted numerous SLMPD officers who were apart of the CDT. Generally, upon initial contact, FBI Special Agent Darren Boehlje would inform an officer that he or she had been identified as a potential witness in the L.H. case and Agent Boehlje would inquire as to whether the officer wanted to partake in a voluntary interview with agents and DOJ attorneys ("the prosecution team") regarding the assault of L.H. It was always the officer's choice to come in for a voluntary interview with the prosecution team or be served with a subpoena and go before the grand jury to answer questions posed by prosecutors.

On July 11, 2018, Agent Boehlje contacted defendant Korte by cellular phone to inquire if Korte wanted to voluntarily meet with the prosecution team for an interview or be served with a subpoena and go before the grand jury to answer questions posed by prosecutors. During the aforementioned phone call, Korte did not indicate that he was represented by an attorney, and Agent Boehlje asked Korte if he was available for an interview on July 26, 2018. At that time, Korte indicated that he would voluntarily come in to talk to the prosecution team on July 26, 2018, but he preferred to meet on July 25, 2018, because he was set to travel out of town. As there were a number of witnesses coming in to participate in voluntary interviews and others who were going straight into the grand jury, Agent Boehlje told Korte that we would get back

3

with him regarding the interview date.  On July 18, 2018, Agent Boehlje contacted Korte via cellular phone and informed him that the voluntary interview was confirmed for Korte's requested date of July 25, 2018.  As the July 25, 2018, meeting was a voluntary interview, Agent Boehlje did not serve defendant Korte with a grand jury subpoena.

On July 25, 2018, Korte arrived alone at the U.S. Attorney's office for his voluntary interview.  FBI Special Agents Darren Boehlje and John Flick, as well as DOJ attorneys Fara Gold and Emily Savner and the undersigned greeted Korte, and he then took part in a voluntary interview with the prosecution team.  During his interview, among other things, Korte denied having any knowledge about what happened to L.H. on September 17, 2017, and Korte stated that he did not make any arrests that evening.  Following the interview, Korte was personally served with a grand jury subpoena to appear before the grand jury on August 8, 2018.

**d.**     **Korte's August 8, 2018 Interview**

On August 8, 2018, Korte once again appeared at the U.S. Attorney's office alone, this time pursuant to a grand jury subpoena. He agreed to meet with FBI SA Darren Boehlje as well as DOJ Special Litigation Counsel Fara Gold and Trial Attorney Emily Savner, prior to his grand jury appearance to discuss the substance of his testimony, and to prepare him for his testimony. It was made clear to the defendant that meeting with the prosecutors and FBI beforehand was completely voluntary, though testifying before the grand jury itself was compulsory.  Korte agreed to meet with the prosecutors and FBI prior to his testimony.

During that meeting prior to his testimony, the defendant was asked if he was willing to listen to an audio recording from the night of L.H.'s assault prior to going before the grand jury. Korte stated that he was willing to review the audio and agreed to listen and answer a few questions. Korte was played an audio recording captured by L.H.'s cellular telephone on

4

September 17, 2017, at the time of his arrest. Korte was asked if he recognized any voices captured, to which he stated he did not. Korte was asked if he heard his own voice in the recording specifically in relation to the words "hands out." He stated that was not his voice and further stated he does not use the phrase "hands out," he uses the phrase "hands up." Korte was asked if he knew why others might have identified the voice on the recording as his and he responded that he did not know why.

At that juncture, the prosecution team decided to excuse the defendant from the grand jury subpoena because Korte's responses with regard to the audio recording conflicted with other witness statements. The prosecution team decided that it needed to further investigate the issue, and could not call Korte before the grand jury at that time. After subsequent investigation and multiple witness interviews, Korte was charged in the instant superseding indictment on December 12, 2019.

## ARGUMENT

### I. MOTION TO SUPPRESS STATEMENTS

Defendant Korte has moved to suppress his statements made to law enforcement officers. Doc. 178. Korte maintains that these statements were obtained without him being properly advised of his *Miranda* Rights. He further argues that his statements were obtained through coercion and as a result were involuntary. Defendant Korte's motion to suppress statements should be denied as he voluntarily took part in two interviews, where he was not in custody, and at no point during either interview was he coerced to make a statement or made to believe he was not free to leave. In addition, Korte was not arrested after either interview. Therefore, Korte's interaction with law enforcement can only be considered voluntary and does support a basis for suppression of either statement.

5

### a. Korte voluntarily participated in the interviews

Korte's claim that his statements were involuntarily because he thought he was required to take part in the interviews is disingenuous and has no merit. Korte was not served a subpoena commanding his appearance before the prosecution team on July 25, 2018. He voluntarily appeared to speak with the prosecution team regarding events surrounding the assault of L.H., he chose the date on which the interview would take place, transported himself to and from the federal courthouse to take part in the interview and he voluntarily left at the termination of the interview. These factors further establish that the July 25, 2018, interaction was voluntary.

On August 8, 2018, Korte did appear pursuant to a grand jury subpoena. However, prior to his testimony Korte was asked if he was willing to listen to an audio recording from the night of L.H.'s assault prior to going before the grand jury, and he stated that he was willing to review the audio and agreed to listen and answer a few questions. Here, "the Government rests on its authority to subpoena witnesses in advance of their presentation to the grand jury in order to allow for the efficient presentation of evidence and to save time for grand jurors. See United States v. Universal Mfg. Co., 525 F.2d 808, 811–12 (8th Cir.1975) (holding that the Government may have advance access to documents and other evidentiary matter subpoenaed by or presented to a federal grand jury); see also In re Possible Violations of 18 U.S.C. §§ 201, 371, 491 F.Supp. 211, 213 (D.D.C.1980) (holding that the Government may call a grand jury witness to its offices pursuant to subpoena on the day of grand jury proceedings for a consensual interview so that Government attorneys may identify the nature of the proposed testimony)." United States v. Wadlington, 233 F.3d 1067, 1075 (8th Cir. 2000). In addition, at the time of both interviews, Korte was a six-year veteran of the SLMPD and no doubt knowledgeable of the rights

promulgated by the United States Constitution for all citizens. Thus, he was fully aware of his rights to refuse to speak with law enforcement, terminate the interview and leave at any time.

As outlined above, Korte's interaction with law enforcement during both interviews was consensual. There are three categories of encounters between law enforcement officers and citizens: consensual encounters, investigative stops, and arrests. United States v. Poitier, 818 F.2d 679, 682 (8th Cir.1987) (citing United States v. Wallraff, 705 F.2d 980, 988 (8th Cir.1983)). Consensual encounters are not coercive and do not involve the restraint of one's liberty. Therefore, they are not 'seizures' and they fall outside the scope of the Fourth Amendment. Id. at 682. The "most obvious and effective means of demonstrating that a suspect has not been taken into custody" is an express advisement that the suspect is not under arrest and that his participation in questioning is voluntary. United States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005), quoting Griffin, 922 F.2d at 1349. Additionally, "a statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir.), cert. denied, 534 U.S. 924 (2001). The Government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary. United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

Furthermore, this case in no terms involved an investigative stop, nor did it involve an arrest. When an individual is the subject of a full, custodial arrest and police seek to interrogate him, he must first be advised of his constitutional rights as announced in Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 468 U.S. 420, 429 (1984). In *Miranda*, the Supreme Court held that before questioning a person in custody, law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used

7

against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. Miranda. 384 at 478-79. "[T]he most obvious and effective means of demonstrating that a suspect has not been taken into custody ... is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir.1990) (internal quotation omitted).

Here, in terms of the first interview, Korte chose the date on which he would travel to the federal courthouse for the voluntary interview, he was free to leave at any time and he was not arrested after the interview was terminated. For the interview on August 8, 2018, Korte was asked if he was willing to listen to an audio recording from the night of L.H.'s assault prior to going before the grand jury, and Korte stated that he was willing to review the audio and agreed to listen and answer a few questions. During that second interview, Korte was once again free to leave at any time and he was not arrested after the interview was terminated. Korte's testimony before the grand jury was compulsory, but partaking in an interview before the grand jury was not compulsory and no one coerced him to do so. Thus, the need to provide Korte with *Miranda* warnings did not exist as he understood he was not in custody and free to leave.

Now, the extent of the physical or psychological restraints placed on defendant must also be examined in light of whether a "reasonable person in the suspect's position would have understood the situation" to be one of custody. Berkemer, 468 U.S. at 442. The determination of custody arises from an examination of the totality of the circumstances. United States v. Laws, 819 F. 3d 388, 396-97 (8th Cir. 2016)(quoting United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). The Eighth Circuit has set out certain indicia of custody, that while not exhaustive, are influential in the court's assessment of the totality of the circumstances:

8

>(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.  Id.

The Griffin court characterized the first three factors as "mitigating factors, that is to say the affirmative presence of one or more of these factors during questioning would tend to mitigate the existence of custody at the time of questioning." Id. On the other hand, "the remaining three factors may be characterized as coercive factors, which is to say that the affirmative presence of one or more of these factors during questioning would tend to aggravate the existence of custody." Id.  In Griffin, the court specifically directed that "it is not necessary to a finding of custody that all of the foregoing indicia be presented by the factual circumstances of a case (citation omitted) and a particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors." (citation omitted). Griffin, 922 F.2d at 1349.

Following the court in Griffin, a reasonable person, and even further a police officer, under the circumstances stated above would not believe that he was not free to leave and that he was under arrest.  The facts will show that each of Korte's interviews was not a custodial interrogation and that the statements made by Korte were voluntary, and therefore no *Miranda* warning or the right to invoke representation by counsel were required.  Factors which show that Korte was not in custody are that: (1) Korte was informed at the outset of contact with FBI via telephone that his participation in an interview was voluntary and he was not required to speak to law enforcement; (2) Korte was not coerced to come to the federal building on July 25, 2018,

9

and he was free to leave the building at any time; (3) during the August 8, 2018, interview he was once again told by prosecutors that his participation in an interview was voluntary and he not required to answer questions prior to providing testimony before the grand jury; (4) Korte was not coerced to answer questions on August 8, 2018, and he was free to leave the interview room at any time; (5) Korte possessed unrestrained freedom of movement during both interviews and was never prevented from leaving; (6) during both interviews none of the interviewers accused Korte of any wrongdoing or criminal activity as the conversation was calm, cordial and non-confrontational; (7) Korte transported himself to and from each meeting; (8) Korte acquiesced to the interviews upon arrival to the U.S. Attorney's Office; (9) no strong-arm tactics were used during the interviews or to prevent Korte from leaving the interview room; (10) FBI agents were in plain clothes, not in SWAT gear, or police vests and they did not possess any weapons, thus minimizing the atmosphere as police dominated; and (11) Korte was not placed under arrest after either interview.  See Griffin, 922 F.2d at 1349.

The prosecution's team simple act of asking questions in a short interview, while emphasizing before Korte arrived and at the meeting that the interaction was voluntary, is not the sort of conduct that results in an overborne will attributable to an agent of the Government. See generally, LeBrun, 363 F.3d at 725–27; Cunningham v. Conway, 717 F.Supp.2d 339 (W.D.N.Y. 2010)(court held that *Miranda* warnings were not required as defendant willingly accompanied police, was not handcuffed, was offered food and beverages, was left alone for a period of time and was not questioned in an accusatory fashion, so a reasonable person innocent of any crime would not have believed that he was in custody).  Therefore, because at the time of the interviews Korte was not a target or a subject of the investigation and his statements were non-

10

custodial, *Miranda* warnings need not have been given. Berkemer v. McCarty, 468 U.S. 420 (1984); Beckwith v. United States, 425 U.S. 341 (1976).

Korte also argues that his statements should be suppressed because they were elicited by coercion. As the testimony and evidence presented at the evidentiary hearing will demonstrate, no threats were made against Korte and no promises were provided to Korte to induce him to partake in an interview. Therefore, Korte's will to resist questioning was not overborne. Here, the testimony and evidence presented at the evidentiary hearing will demonstrate that Korte was not threatened or coerced, nor were there any express or implied promises regarding prosecution during the interview because Korte was merely viewed as a witness to the assault of L.H. Accordingly, Korte's motion to suppress statements should be denied.

## II. MOTION TO SEVER

Defendant Korte's motion to sever his case from that of his co-defendants should be denied. Doc. 177. The defendants were properly joined in the same indictment pursuant to the Federal Rules of Criminal Procedure, and Korte fails to demonstrate the compelling prejudice required to warrant deviating from the longstanding preference in the federal system for joint trials of defendants who were properly indicted together. Korte's speculation that some text message conversations of which he was not a part will unfairly prejudice his right to a fair trial is just that – speculation. To be sure, the Government has produced in discovery many text messages that pertain to the charges in the indictment, however the Government has not yet decided which text messages to seek to introduce at trial. If the Government moves to introduce text messages that, while admissible against his co-defendants, ultimately may not be admissible against Korte, the Court can instruct the jury as to how it may consider such text messages in its

11

deliberations.  Korte has proffered no information demonstrating that such a limiting instruction would be insufficient.  The Government requests that the Court deny Korte's severance motion.

### a.  Joinder was proper

The Government properly joined Korte in the same superseding indictment with his co-defendants Dustin Boone and Christopher Myers.  Rule 8 of the Federal Rules of Criminal Procedure provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.

Fed. R. Crim. P. 8(b).  In this case, Korte, Boone, and Myers are charged in count one with aiding and abetting each other in depriving L.H. of his constitutional rights by using unreasonable force against him while acting under color of law.  See United States v. Boone et al., 4:18CR975CDP, Doc. 136 ("Indictment"), pp. 1-7.  In count three of the indictment, Korte is charged with lying to agents during the investigation into the crime charged in count one.  Id. at 7.  All three defendants are charged with the same offense, occurring at and over the same period of time, and arising out of essentially the same set of operative facts.  Thus, there is no question that the Government properly joined all three defendants in the same indictment, and defendant Korte's motion does not argue otherwise.  Fed. R. Crim. P. 8(b).

### b.  No prejudice exists requiring severance

Korte claims that this Court should sever his case from that of his co-defendants because of the spillover effect of text message conversations involving his co-defendants.  Although a court may grant a severance of trials "[i]f the joinder of … defendants in an indictment … appears to prejudice a defendant," Fed. R. Crim. P. 14(a), there is no basis for severance in this case because Korte cannot demonstrate that a joint trial will prejudice his right to a fair trial.

12

United States v. Young, 753 F.3d 757, 777 (8th Cir. 2014) (citation omitted). "Prejudice sufficient to require severance occurs when the defendant is deprived of an appreciable chance that he would not have been convicted in a separate trial, and not merely when he would have had a better chance for acquittal in a separate trial." United States v. Vue, 13 F.3d 1206, 1210 (8th Cir. 1994), quoting United States v. O'Meara, 895 F.2d 1216, 1219 (8th Cir.1990).

In addition, "there is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 538 (1993). The joinder and severance rules "are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." Id. at 540. Generally, defendants indicted together should be tried together in the interests of judicial economy. Buchanan v. Kentucky, 483 U.S. 402, 218 (1987). Furthermore, a joint trial allows the jury a more complete picture of the crime and thus increases the likelihood of a correct outcome. Young, 753 F.3d at 778. Joint trials also serve the interests of justice in that they avoid the scandal and inequity of inconsistent verdicts. Zafiro, 506 U.S. at 538.

In addition, the Eighth Circuit cautions that "there is a strong presumption for [a] joint trial [of properly joined defendants], as it 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" United States v. Flores, 362 F.3d 1030, 1039-40 (8th Cir. 2004) (quoting United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995)); accord United States v. Henley, 766 F.3d 893, 915 (8th Cir. 2014). To warrant severance, a defendant must show "real prejudice," that is, "something more than the mere fact that he would have a better chance for acquittal had he been tried separately." United States v. Oakie, 12 F.3d 1436, 1441 (8th Cir. 1993). Thus, a defendant "carries a heavy burden in

13

demonstrating that severance is mandated." Young, 753 F.3d at 777.  The decision whether to grant a severance is committed to the sound discretion of the district court.  United States v. Wint, 974 F.2d 961, 966 (8th Cir. 1992), cert. denied, 506 U.S. 1062 (1993).

      A defendant may show sufficient prejudice to require a severance under Rule 14 by demonstrating that his defense is irreconcilable with that of his co-defendants, or that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants.  United States v. Mueller, 661 F.3d 338, 347-48 (8th Cir. 2011), cert. denied, 132 S. Ct. 1951 (2012).  Korte does not claim that his defense is irreconcilable with that of any of his co-defendants.  Thus, the issue here is whether the jury will be able to compartmentalize the evidence against each defendant and make independent judgments as to their guilt or innocence.  United States v. Gutberlet, 939 F.2d 643, 645 (8th Cir. 1991), citing United States v. Reed, 658 F. 2d 624, 629 (8th Cir. 1981)(court opined that regardless of the relative strength of the evidence against each co-defendant, severance would only be required in the circumstances of this case if the jury could not reasonably be expected to compartmentalize the evidence relating to each defendant.).

      The charges and evidence in this case are straightforward such that a jury will not be confused or incapable of compartmentalizing the evidence against each defendant.  As the indictment shows, the charges arise out of the same series of acts, particularly the co-defendants all encountering L.H. in the same time frame, assaulting L.H. together, and then the defendant lying to federal law enforcement officers regarding the assault.  The charges are not complicated and the issues to be presented and proven at trial are not complex.  Further, the Court will certainly instruct the jury to assess each defendant's guilt separately during the Government's case and in final instructions.  See United States v. Mickelson, 378 F.3d 810, 818 (8th Cir. 2004)

14

("The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions."); 8th Cir. Model Jury Instructions 2.14 & 3.08.

To warrant severance requires "a specific showing that a jury could not reasonably be expected to compartmentalize the evidence." United States v. Hively, 437 F.3d 752, 765 (8th Cir. 2006). Defendant Korte's claim in this case is speculative and thus cannot overcome the presumption in favor of a joint trial. Korte claims that he will suffer prejudice from the spillover effect of text message conversations in which he took no part and which he says are not relevant to him. To support his claim, Korte cites United States v. Baker, 98 F.3d 330 (8th Cir. 1996), in which the Eighth Circuit reversed Baker's conviction for possessing a toxin for use as a weapon in violation of 18 U.S.C. § 175 on the grounds that the district court should have granted his motion for severance.

However, Baker is an outlier and is aptly described in the opinion as "*the rare case* in which severance should have been granted." Id. at 335 (emphasis added). The factors that made Baker the "rare case" warranting severance simply are not present here. Korte is charged with lying to federal agents during an investigation of the crime that he is charged with committing with his co-defendants. Additionally, the Government is not required to allege a conspiracy in order to join defendants or counts, instead what is required is a series of acts unified by some substantial identity of facts or participants. See United States v. McRae, 702 F.3d 806, 820-821 (5th Cir. 2012)(citing United States v. Dennis, 645 F.2d 517, 520 (5th Cir. 1981)) ("Although multi-defendant and multi-offense indictments often charge a conspiracy among some or all defendants, we have repeatedly rejected the contention that proper joinder of multiple defendants and multiple offenses requires a conspiracy charge.").

15

Moreover, Korte's concern that if a co-defendant testifies they would be obligated to comment on Korte's failure to testify is speculative as well. Korte's argument that his failure to testify would prejudice him, because Boone and Myers would then comment on that fact, does not support severance here. Korte has failed to show that that Boone and Myers will in fact testify and that their defense counsel will comment on Korte's decision to not testify. In addition, Boone and Myers can also choose to invoke their Fifth Amendment right not to testify in their own trial or at Korte's trial, so this argument fails. Furthermore, the statement about which Korte maintains is prejudicial, was not a "confession" as Korte asserts, but rather a representation by co-defendant Myers to another SLMPD officer that Myers was not the only officer involved in the assault. Thus, once again, the jury can reasonably be expected to compartmentalize the evidence relating to each defendant, and severance is not required.

### III. MOTION TO DISMISS THE INDICTMENT

Co-defendants Korte and Myers' motion to dismiss the indictment because an unknown member of the SLMPD allegedly manually moved a video camera to avoid capturing evidence of L.H.'s assault and the Government failed to preserve that evidence should be denied. Docs. 176, 188. Here, the Government was not in control of capturing and maintaining the video footage at issue, there is no evidence that the Government lost or destroyed material video footage of L.H.'s assault, and thus there was no bad faith on the part of the Government. Therefore, the motion to dismiss the indictment should be denied.

The Due Process Clause requires that the prosecutor disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." California v. Trombetta, 467 U.S. 479, 485 (1984). "A due process violation occurs whenever the Government "suppresses or fails to disclose material exculpatory evidence.

16

Illinois v. Fisher, 540 U.S. 544, 124 S.Ct. 1200, 1202 (2004) (per curiam) (citing Brady v. Maryland, 373 U.S. 83 (1963)).  "To meet the standard of constitutional materiality, see United States v. Agurs, 427 U.S., at 109–110, 96 S.Ct., at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Trombetta 467 U.S. at 488-489.  Neither of these conditions is met on the facts of this case.

In addition, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); United States v. Boswell, 270 F.3d 1200, 1207 (8th Cir.2001). United States v. Houston, 548 F.3d 1151, 1155 (8th Cir. 2008).  Also, neither Trombetta nor Youngblood impose a duty upon the police to collect evidence.  See Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir. 1988)("Since, in the absence of bad faith, the police's failure to preserve evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to collect such evidence violate due process."). Furthermore, "a failure to collect potentially useful evidence is distinctly different than a destruction of evidence that is already extant." United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004).

The co-defendants have failed to show that the video footage, which they think should exist, possessed material exculpatory value and they have failed to show that the Government neglected to preserve that evidence.  Here, Korte and Myers argue that the SLMPD video evidence may have exculpated both, but it very well may have inculpated Korte and Myers further, so it is not per se material.  See, Martinez-Martinez, 369 F.3d at 1087.  Also, this case

17

involves the SLMPD's retention of video footage, which was kept in their regular course of business, similar to the non-Governmental office involved in United States v. Holman. 2013 WL 12204324, *3-4 (D. Nev. 2013).  In Holman, a defendant argued that the Government was required, under its due process obligation, to collect or preserve potentially exculpatory email evidence from a non-Governmental office's email server.  Id.  There, the court held that the defendant had not shown that the Government lost or destroyed evidence in its possession in violation of the defendant's due process rights, and therefore the Government had not acted in bad faith to destroy exculpatory evidence that could not be obtained by other reasonable means. Id.  Thus, similar to Holman, the co-defendants have not shown that the Government lost or destroyed material evidence in its possession, so the Government has not acted in bad faith. Id.

Even further, Korte and Myers have failed to show that they are unable to obtain comparable evidence by reasonable means, as they are keenly aware of the other SLMPD officers who were present in the area during L.H.'s assault.  The co-defendants can surely subpoena officers present at the scene to testify regarding what occurred at the time the SLMPD video footage was recorded. See, Trombetta, 467 U.S. at 489.  Certainly, first-hand observations and testimony from other police officer witnesses would be comparable evidence to present during the trial in this matter, as well as Korte and Myers' testimony regarding their observations at the scene of L.H.'s assault.  Therefore, these sources provide sufficient evidentiary alternatives to the "preferred" video footage, so there is no due process violation here, and no basis to dismiss the indictment. See United States v. Brimage, 115 F.3d 73 (1st Cir.1997) (finding no due process violation even when the "other evidence" available to the defense was the testimony of defendants who would have to waive their fifth amendment right not to testify); United States v. Parker, 72 F.3d 1444, 1452 (10th Cir.1995)(defendant had access to comparable evidence of

18

video recording of traffic stop because he could have testified or called witnesses to testify about the events recorded). Lastly, the mere fact that a defendant is left with inferior evidence does not create a due process violation. See Elmore v. Foltz, 768 F.2d 773, 778 (6th Cir.1985) (due process not violated by destruction of audio tapes of drug transaction despite the fact that "no better tool exists for impeaching" the adverse witness than the tapes). Accordingly, Korte and Myers' joint motion to dismiss the indictment should be denied.

### IV. CONCLUSION

For all the foregoing reasons, this Court should deny defendant Steven Korte's Motion to Suppress Statements and Motion to Sever, as well as defendant Christopher Myers and Steven Korte's Joint Motion to Dismiss the Indictment.

Respectfully submitted,
JEFFREY B. JENSEN
United States Attorney


*/s/ Jennifer A. Winfield*
JENNIFER A. WINFEILD, #53350MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200
jennifer.winfield@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/ Jennifer A. Winfield*
JENNIFER A. WINFEILD, #53350MO
Assistant United States Attorney