UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | No.: S1-4:18-cr-00975-CDP (JMB) |
| ) | |
| DUSTIN BOONE, ) | |
| CHRISTOPHER MYERS, and ) | |
| STEVEN KORTE, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT STEVEN KORTE'S RENEWED MOTION TO SEVER
DEFENDANTS AND COMBINED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant, Steven Korte ("Defendant" or "Korte"), by and through undersigned counsel, and hereby submits the following Renewed Motion to Sever Defendants and Combined Memorandum of Law in Support:

**MOTION**

1.      On December 12, 2019, a superseding indictment (Doc. # 136) (the "indictment") was issued in this case, charging Korte and two other law enforcement defendants with crimes related to the St. Louis Metropolitan Police Department's ("SLMPD") response to protests resulting from Officer Stockley's acquittal in September 2017.

2.      The indictment charges three counts against the defendants, including one count of deprivation of L.H.'s constitutional rights (count I), and one count of making false statements to a federal officer (count III).

3.      The indictment itself, and the discovery in this case, includes a number of inflammatory and inculpatory statements made by co-defendants regarding protesters and

the protests and the incident referenced in the indictment. Korte did not make similar statements nor is he referenced in co-defendants' statements.

4. Rule 14 authorizes a court to order separate trials of counts or defendants if there will be prejudice to a party, even if joinder is otherwise proper.

5. Korte's trial should be severed from that of his co-defendants under Rule 14 due to prejudicial issues that are likely to arise in a joint trial.

6. Korte hereby incorporates the following memorandum of law in support.

### MEMORANDUM OF LAW

#### I. INTRODUCTION

Korte's trial on counts I and III should be severed from the trial of the other defendants in the indictment because the anticipated introduction and use of inflammatory text messages and admissions from the other defendants would be substantially prejudicial to Korte. Thus, Korte's trial should be severed from the other defendants' trial under Rule 14.

#### II. BACKGROUND

The indictment alleges three counts against three SLMPD officers arising from allegations concerning law enforcement's actions during protests after the acquittal of Officer Stockley in September 2017. (Doc. 136.) Count I of the indictment alleges that all three defendants "deprived L.H. of the right to be free from unreasonable seizure, . . . which includes the right to be free from unreasonable force" and that the alleged actions "resulted in bodily injury to L.H." (*Id.* at 6.) Count III alleges that Korte made false statements to a Special Agent of the Federal Bureau of Investigation (FBI) concerning facts material to a matter being investigated by the FBI. (*Id.* at 7.)

2

The indictment includes several pages of inflammatory text messages from the other defendants—which do not involve or mention Korte—regarding the protests, treatment of protesters, and L.H.'s arrest. (*Id.* at 2-5.) Additional text messages to or from the codefendants were disclosed in discovery. Based on the inflammatory text messages, Korte filed a motion to sever his trial from his codefendants.  (Doc. 177.) The Court denied the motion. (Doc. 238 at 28-29.)

Recently, the government provided a list of codefendants' text messages that it intends to use these at trial.  (Doc. 277.) The text messages include derogatory statements regarding protesters, such as the following:

- September 14, 2017 from Boone: "Yep 9am to practice walking in a line with a stick . . . . . until shit gets real and they realize walking in a line doesn't work as well as swinging the stick!" (*Id.* at 8.)

- September 15, 2017 from Myers: ". . . let's whoop some ass" (*Id.* at 9.)

- September 15, 2017 from Boone: "No stick or shield, just fuck people up when they don't act right." (*Id.* at 10.)

- September 15, 2017 from Boone: "It's he and I that just grab fuckers and toss em around." (*Id.* at 10.)

- September 15, 2017 from Boone: "But its gonna be a lot of fun beating the hell out of these shitheads once the sun goes down and nobody can tell us apart!!!!" (*Id.* at 11.)

- September 15, 2017 from Myers: ". . . for some sick reason I live for this." (*Id.* at 11.)

- September 15, 2017 from Boone: "We really need these fuckers to start acting up so we can have some fun." (*Id.* at 12.)

- September 16, 2017 from Boone: "This shit is crazy . . . . . but it's fucking AWESOME too! Except for cops getting hurt. People on the streets got FUCKED UP! Lol" (*Id.* at 13.)

- September 16, 2017 from Myers: "Yea were all kind of tired and with 10 officers already injured one with a broken jaw and one with a dislocated shoulder I think

3

the bosses are being a little more lenient with the use of force by us [winking emoji]." (*Id.* at 14.)

- September 16, 2017 from Boone: ". . . u will see the REAL POLICE come in and clear these fuckers REAL QUICK. We ain't fuckin w them tonight." (*Id.* at 15.)

- September 17, 2017 from Boone: "A lot of cops getting hurt, but it's still a blast beating people that deserve it. And I'm not one of the people hurt, so I'm still enjoying each night." (*Id.* at 16.)

- September 20, 2017 from Boone: "The problem is when they start acting like fools, we start beating the shit out of everyone on the street after we give two warnings. . . . ." (*Id.* at 20.)

- September 20, 2017 from Boone: "U may see some people getting their ass best, but u will b able to get in without fear! Lol" (*Id.* at 20.)

- September 21, 2017 from Boone: "Here we go. Fuckin animals" (*Id.* at 21.)

- September 23, 2017 from Boone: "Did everyone see the protestors getting FUCKED UP in the galleria???? That was awesome!" (*Id.* at 23.)

- November 11, 2017 from Boone: "Yep, Mother fuckers. Dude got caught in a dead end gangway tho . . . . . he was crying and bloody for making me fucking run that far." (*Id.* at 30.)

- November 11, 2017 from Boone: "We just chased a car for a shooting, got all 4 shit heads and the gun, but I had to run forever again and feel like shit right now. Can't breathe. But dude got GOT in a dead end gangway by me and he is NOT in good shape now." (*Id.* at 30.)

- November 19, 2017 from Myers: "We had actually disengaged our following when we witnessed the crash and at that point we activated our equipment to check on the officer and try to fuck up the bad guy." (*Id.* at 31.)

- May 2, 2018 from Myers: "Yea but it[][punching someone] [is] fun." (*Id.* at 31.)

Additionally, the government intends to offer the following texts that include admissions from the codefendants regarding the crimes charged in this case:

- September 18, 2017 from Boone: "I'm getting my ass chewed for the [L.H.] stuff and I basically held his head down to the ground and told him not to look as he got cuffed up. Apparently someone on the arrest team we handed him off to broke his fucking camera and smashed his phone. Unfuckingreal." (*Id.* at 17.)

4

- September 18, 2017 from Boone: "Yes, trust me, I am WAY more alright with what u and I did than what the others did! I don't like that we put our hands on another copy, but the situation was a little fucked up too, wasn't JUST us." (*Id.* at 17.)

- September 19, 2017 from Boone: "Nope, he is being typical [self]. I'll tell u his whole attitude, but basically he told me if he was running around down there w the protestors and his own personal camera and didn't tell is he was a cop, then he gets what happens to a protestor. kinda said it's on him or the department but OF COURSE nothing wrong w what he did or we did." (*Id.* at 18.)

- September 19, 2017 from Boone: "I talked to my dad, he reached out to [L.H.'s] lieutenant, Crews, and talked to him on my behalf. I asked to just meet with [L.H.] after he is healed or whenever he wants to and clear the air. I don't really know what to think right now, I haven't personally had contact with [L.H.], I don't want people thinking I'm out here just head hunting people though." (*Id.* at 19.)

- September 19, 2017 from Boone: "Jesus I feel fucking AWFUL! I was dumbfounded when the commanders told me that he was a cop. It's so damn embarrassing to be anywhere involved in this." (*Id.* at 19.)

- September 20, 2017 from Boone [in response to a text that stated "You must have put a pretty good whooping on him]: "Yeah, unfortunately. Not one I'm very proud of!!" (*Id.* at 21.)

- September 25, 2017 from Boone: "[L.H.], this is Dustin Boone. I am sure you know by now that I was involved in the incident last Sunday downtown. I have attempted to reach out ot you through a few different commanders and I have been told to hold off. I have not heard much form anyone in regard to you receiving the message I wanted to be conveyed to you so I decided to text you myself today. I feel like an apology will never be enough butI would really like to speak to you in person so I can apologize face to face as a man and not through a text message. I completely understand if you are not wiling to meet with me and if that is the case, I would ask if you are willing to accept a phone call from me once you are healthy and feel the timing is right. Again, I would much rather tell you I am sorry while I'm standing in front of you than over a telephone, but understand your side of all of this as well. Please let me know and if you are willing, I will be available at any point in time. I hope you are healing both physically and mentally, I can't imagine what you have gone through the past week. I hope you allow me the opportunity to tell you I am sorry in person, it won't make it right but I feel it is the very least I can do. I hope to talk to you soon [L.H.] Get well." (*Id.* at 24.)

- September 25, 2017 from Myers [in response to a text asking Myers if he wanted someone to talk to L.H. for Myers]: "Yea if u can I have been wanting to

5

apologize to him personally cuss I feel bad. We obviously didn't know he was a policeman." (*Id.* at 25.)

- September 25, 2017 from Boone: "I have not [heard anything about the incident], except people saying they r hearing [the officer] busted all of his shit and kicked him in the head. Sgt. Manley asked him what happened in front of Walls and myself and he changed his story about 5 times, denied everything, then said he smashed the phone, then says he threw the camera battery . . . . . said he doesn't remember if he kicked him in the head or not! He's a joke." (*Id.* at 26.)

- September 25, 2017 from Boone: "Just [the officer] changing his story again . . . . . and apparently Manley heard a really fucked up account of events and said he heard everyone was gonna be forced to resign. I'm pretty concerned right now just because it's all unknown. Manley seemed to be very unhappy w [the officer] and thought he was lying his ass off." (*Id.* at 26.)

- September 25, 2017 from Hays: "We know what happened, we know [the officer] is lying, it's all rumors and shit now." (*Id.* at 27.)

- September 25, 2017 from Boone: "Hays, a guy involved in the [L.H.] incident, got a call tonight from the association saying to call Brian Millikan tomorrow so they can get out in front of this . . . . . why would they not call me and give me a heads up too??? My actions were not the same as Hays and [another officer] but still. Nobody knows if they called [another officer] cuz Manley told him to leave tonight. . ." (*Id.* at 27.)

Korte filed a motion to exclude many of these text messages. In the event that some or all of Korte's motion to exclude the text messages is denied and the government is able to introduce these text messages at trial, Korte will be unfairly prejudiced by their admission. The Bruton issues raised by these statements—and the statements involved is substantially different that Defendant Korte anticipated and referenced in his earlier motion to sever filed in this matters.  Therefore, Defendant Korte renews his motion to sever defendants. *See United States v. Crumley*, 528 F.3d 1053, 1062 (8th Cir. 2008) ("when the trial produces a material change in the facts, 'the motion to sever must be renewed so that the trial court can rule on the motion with the benefit, and in light of,

6

knowledge of the true (and changed) situation.'") (quoting *United States v. Dobin*, 938 F.2d 867, 869 (8th Cir.1991).

### III. ARGUMENT

Rule 14(a) states that "[i]f joinder of offenses or defendants . . . in an indictment, . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any relief that justice requires." Rule 14 provides a mechanism for a party to sever counts if there will be prejudice to that party, even if joinder is otherwise proper. Fed. R. Civ. P. 14(a). A motion for severance under Rule 14 is committed "'to the district court's sound discretion.'" *United States v. Adams*, 401 F.3d 886, 895 (8th Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993)); *see also United States v. Oxford*, 735 F.2d 276, 279 (7th Cir. 1984).

#### A. "Spillover" Evidence

The statements of the other defendants are "spillover" evidence, likely to be prejudicial against Korte. "Severance is proper 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)). Where there is reason to believe the jury will not be able to isolate the evidence presented against each co-defendant and make an independent determination of guilt with respect to each co-defendant, a Rule 14 severance is warranted. *See, e.g., United States v. Durham*, 984 F.2d 960, 965 (8th Cir. 1993) (noting that disparity of evidence can provide a basis for severance under Rule 14 if the defendant is prejudiced by the jury's inability "to compartmentalize the evidence");

7

*United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993) (defendants must be severed if defendant can show that a jury will not be able to (1) capably sort through the evidence and (2) follow instructions from the court to consider each defendant separately); *Hamilton v. United States*, 434 U.S. 1020 (1978) ("joint trials, and especially those involving many defendants, carry substantial risks of manifest unfairness. . . . the major burden falls upon the shoulders of the trial judge… who must be constantly aware of the possibilities of jury confusion and guilt by implication and continually vigorous in his efforts to forestall those effects."). The primary concern in this regard is that the jury will impute the guilt of one or more co-defendants to another co-defendant. *See United States v. McLaurin*, 557 F.2d 1064, 1074 (5th Cir. 1977).

Courts have determined that severance is appropriate based on the presentation of inflammatory evidence that is irrelevant to the party seeking severance. *See U.S. v. McRae*, 702 F.3d 806 (5th Cir. 2012). In *McRae*, the court held that the trial court abused its discretion in denying a law enforcement officer severance from the trial of his co-defendant officers under Rule 14. *Id.* at 828. The court held that the evidence presented regarding the other officers—who engaged in a cover-up—was highly emotionally charged and inflammatory, irrelevant to the defendant, and impliedly implicated the defendant in an uncharged conspiracy. *Id.* 826-28. *See also United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998) (holding that limiting instructions were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent activities of the gang, with which defendants were never affiliated).

Here, admission of the text messages against the other defendants carries the risk that the jury will impute the motives, intent, and admissions of the other defendants to

8

Korte. A large number of the text messages from the codefendants include inflammatory statements about protesters and police interacting with protesters. Particularly in a climate that includes widespread coverage and societal awareness of police culture and police interactions with protesters, these text messages support a narrative that all law enforcement share the sentiments expressed in the texts. Although Korte is not a party to cited text messages, nor is he mentioned in cited messages, he will be sitting at the defense table alongside the authors of the text messages and he wears the same uniform and works for the same department as they do. These text messages suggest that the jury to make a finding of guilt on an improper basis—Korte's status as a police officer in the same department as the individuals participating in the communications—rather than the facts of the case.

### B. *Bruton* Concerns

The introduction of "incriminating extrajudicial statements" by a non-testifying co-defendant "violate[s] [the defendant's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton v. United States*, 391 U.S. 123, 126 (1968). The Confrontation Clause of the Sixth Amendment gives a criminal defendant the right to cross-examine witnesses against him. *See* U.S. Const., amend. 6. The Confrontation Clause applies to "testimonial statements, such as prior testimony at a preliminary hearing, former trial, or before a grand jury and statements made in the course of police interrogations." *United States v. Garth*, 540 F.3d 766, 778 (8th Cir. 2008) (*citing Crawford v. Washington*, 541 U.S. 36, 68 (2004)) (emphasis added). In *Bruton*, the Supreme Court ruled that—in a joint trial—the admission of a co-defendant's confession, which implicated the appellant, was error where the co-defendant did not

9

testify and thus was not subject to cross-examination by the appellant. *Bruton*, 391 U.S. at 135-37. The Court further held that, even though a limiting instruction was given that the jury should not consider the confession as to the appellant, "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." *Id.* at 137.

*Bruton* is violated when the fact that a statement has been redacted is so obvious as to lead the jury through ordinary inferences directly to a defendant. *See Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("[W]e believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results."); *see also United States v. Garcia*, 836 F.2d 385, 391 (8th Cir. 1987) (redaction permissible where "the language in the statement as testified to did not draw attention to the fact that the prosecution had the name available to it and purposely omitted it from the statement"). In fact, the Supreme Court noted that the obvious indication of alteration is accusatory. *Gray*, 523 U.S. at 194; *see also United States v. Donahue*, 948 F.2d 438, 444 (8th Cir. 1991) (citing *United States v. Long*, 900 F.2d 1270, 1280 (8th Cir. 1990)) (there can be "no improper linkage between the statement and [the defendant], nor . . . an impermissible invitation to speculate").

The government redacted names of a codefendant and a nondefendant from certain text messages. (*See* Doc. 277, sections p, z, aa, bb). These redactions indicate that an unnamed officer was involved in L.H.'s arrest. The redactions referencing an unidentified officer cause the jury to impermissibly speculate that the officer is one of the

codefendants. Korte is not the officer whose name was redacted from the text messages. If the statements are not kept out or if Korte's trial is not severed, he will be placed in a position where he will be subject to improper speculation, or will have to call attention to the redaction in clearly establishing that he is not the individual identified in redacted statements.

### IV.   CONCLUSION

The inflammatory and incriminating text messages involving the other defendants that the government intends to use at trial raise serious concerns regarding prejudice to Korte. If these statements are held to be admissible against the other defendants, substantial prejudice to Korte that will result if the defendants are tried together and the jury hears these statements, this Court should grant Korte's motion to sever under Rule 14 and order a separate trial as to Korte.

Dated: February 22, 2021                                     Respectfully submitted,

                                                             ROGERS, SEVASTIANOS & BANTE, LLP


                                                      By:    /s/ John P. Rogers
                                                             JOHN P. ROGERS, #38743MO
                                                             Attorney for Defendant Korte
                                                             120 S. Central Avenue, Suite 160
                                                             Clayton, Missouri 63105
                                                             (314) 354-8484
                                                             Facsimile 354-8271
                                                             jrogers@rsblawfirm.com

### **CERTIFICATE OF SERVICE**

By signature below, I hereby certify that on February 22, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorneys Carrie Constantin and Robert F. Livergood.

                                                             /s/ John P. Rogers