UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | No.: S1-4:18-cr-00975-CDP (JMB) |
| ) | |
| DUSTIN BOONE, ) | |
| CHRISTOPHER MYERS, and ) | |
| STEVEN KORTE, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT STEVEN KORTE'S MOTION IN LIMINE TO EXCLUDE TEXT MESSAGES AND COMBINED MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant, Steven Korte ("Defendant" or "Korte"), by and through undersigned counsel, and hereby submits the following motion *in limine* requesting the exclusion of text messages sent to or from codefendants Dustin Boone and Christopher Myers.

**MEMORANDUM OF LAW**

**I.     Background**

The superseding indictment alleges three counts against three SLMPD officers arising from allegations concerning law enforcement's actions during protests after the acquittal of Officer Stockley in September 2017. (Doc. 136.) Count I of the indictment alleges that all three defendants "deprived L.H. of the right to be free from unreasonable seizure, . . . which includes the right to be free from unreasonable force" and that the alleged actions "resulted in bodily injury to L.H." (*Id.* at 6.) Count III alleges that Korte made false statements to a Special Agent of the Federal Bureau of Investigation (FBI) concerning facts material to a matter being investigated by the FBI. (*Id.* at 7.)

The government has disclosed text messages sent and received by codefendants Dustin Boone and Christopher Myers that it intends to offer at trial. (Doc. 277.) The text messages include statements about protesters in general and about the officers involved in L.H.'s arrest. The government redacted names from some of the text messages. (*Id.* at 18, 26, 27.) Those names that were redacted include a defendant and one or more officers who are not a defendant.

## II.   Law and Argument

"'The trial court has broad discretion in determining the relevancy and admissibility of evidence.'" *United States v. Nadeau*, 598 F.3d 966, 968 (8th Cir. 2010) (quoting *United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir, 2007)). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Buchanan*, 604 F.3d 517, 521 (8th Cir. 2010) (quoting Fed.R.Evid. 801(c)). Where evidence includes multiple layers of hearsay, "each layer of hearsay must be admissible under the rules of evidence." *United States v. Sparkman*, 500 F.3d 678, 683 (8th Cir. 2007).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The district court must 'balanc[e] the probative value of and need for the evidence against the

2

harm likely to result from its admission.'" *United States v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee notes).

"'Unfair prejudice under Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir.1995)). "'Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.'" *Id.* (quoting *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir.2011) (citations omitted). "'[I]n determining whether proffered evidence is misleading or confusing, the trial court is given a great deal of discretion.'" *Id.* (quoting *United States v. Witschner*, 624 F.2d 840, 846 (8th Cir.1980)). "[E]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FRE 404(b)(1).

### A. The text messages are inadmissible.

The following text messages are irrelevant or contain inadmissible hearsay and, therefore, they should not be admitted at trial.

1. Boone's texts on September 19, 2017 (p).[1]

The government is offering the following text messages between Boone and Kyle Santa on September 19, 2017:

**Kyle Santa**: Did [that][2] dumb ass even reach out to [L.H.] and apologize?

---

[1] The letters used by the government in its Notice of Intent (Doc. 277) to identify the texts it intends to use at trial are included for ease of reference.

[2] The government included this redaction.

3

>**Boone:** Nope, he is being typical [self].[3] I'll tell u his whole attitude, but basically he told me if he was running around down there w the protestors and his own personal camera and didn't tell us he was a cop, then he gets what happens to a protestor. kinda said it's on him or the department but OF COURSE nothing wrong w what he did or we did.
>
>**Boone:** I talked to my dad, he reached out to [L.H.'s] lieutenant, Crews, and talked to him on my behalf. I asked to just meet with [L.H.] after he is healed or whenever he wants to and clear the air. I don't really know what to think right now, I haven't personally had contact with [L.H.], I don't want people thinking I'm out here just head hunting people though.

(Doc. 277 at 18-19). The government argues that these text messages are admissible as admissions to the charged crime.

Boone and Kyle Santa's text messages are inadmissible hearsay. Kyle Santa's text message is hearsay and the government's reason for offering it is to provide context to Boone's text message. However, Boone's text message is inadmissible. The second text in the string does not contain an admission of wrongdoing by Boone; instead, it contains hearsay statements from a third person regarding that person's alleged conduct and "attitude." The statements regarding the unidentified third party's "attitude" are not only hearsay, they are irrelevant to proving Boone's intent or conduct. Boone's second text message is inadmissible and should be excluded. That means Kyle Santa's text message is not needed to provide context and it should also be excluded as irrelevant and hearsay.

The first two text messages from Boone and Kyle Santa are also unduly prejudicial. They both contain redactions that provide an opportunity for the jury to speculate about who the unnamed officer is. The context of the text messages and redactions make it clear that the redacted person was allegedly involved in L.H.'s arrest. The third text in the string arguably contains an admission by Boone. To the extent this

---

[3] The government included this redaction.

4

text message is admissible, it stands on its own. Neither of the other two messages in the string are necessary to provide context to the third message.

    2.        Boone's texts with "Dad" on September 25, 2017 (z).

The following text messages between Dustin Boone and "Dad" on September 25, 2017 are inadmissible:

> **Boone:** In car w fucking [officer][4] tonight, what's up? I don't even wanna speak around this asshole
>
> **Dad:** Don't get involved in anything with that guy. Did you hear anything more today
>
> **Boone:** I have not, except people saying they r hearing [the officer][5] busted all of his shit and kicked him in the head. Sgt. Manley asked him what happened in front of Walls and myself and he changed his story about 5 times, denied everything, then said he smashed the phone, then says he threw the camera battery . . . . . said he doesn't remember if he kicked him in the head or not! He's a joke.

(Doc. 277 at 26.) The government is arguing that these texts are "probative of whether L.H.'s phone and camera were intentionally mutilated, altered or broken." (*Id.* at 25.)

The first two text messages in the chain are irrelevant and hearsay. They are not probative as to any fact at issue. The fact that Boone dislikes the person he is working with that particular evening is not relevant to proving that L.H.'s phone and camera were intentionally broken. Boone is not accused of intentionally destroying L.H.'s phone, and he does not admit to doing so in these communications. The only statements that do relate to L.H.'s phone and camera being broken are in the third text message in the chain, from Boone. That text message contains only inadmissible hearsay. It is comprised entirely of alleged statements from third parties regarding an unidentified person's actions.

---

[4] The government included this redaction.
[5] The government included this redaction.

5

Additionally, to the extent this statement is admissible and has any probative value, it is outweighed by the risk of undue prejudice. The redactions invite the jury to speculate about the identity of the person who allegedly broke the camera and kicked L.H.

    3.     Boone's texts with Hays on September 25, 2017 (aa).

The government intends to offer the following text messages on September 25, 2017 between Boone and Randy Hays, who pled guilty to his involvement in the charged offense:

> **Boone:** Heard anything today?
>
> **Hays:** Nothing at all, how about you.
>
> **Boone:** Just [the officer][6] changing his story again . . . . . and apparently Manley heard a really fucked up account of events and said he heard everyone was gonna be forced to resign. I'm pretty concerned right now just because it's all unknown. Manley seemed to be very unhappy w [the officer] and thought he was lying his ass off.
>
> **Hays:** That's not going to happen, they don't have just cause to do that and can't. Who is manly?
>
> **Boone:** My sergeant. Came from spec ops and now runs our little squad
>
> **Hays:** We know what happened, we know [the officer][7] is lying, it's all rumors and shit now.

(Doc. 277 at 26-27.) The government argues that Boone's texts show his consciousness of guilt and that Hay's texts provide context for Boone's texts. (*Id.* at 26.)

The text messages are inadmissible hearsay. They do not contain admissions of guilt by Boone but prejudicial statements about another officer "lying his ass off." Further, the government has stated that it will call Hays, one of the participants in the

---

[6] The government included this redaction.
[7] The government included this redaction.

6

conversation, as a witness at trial. Hays can testify to the information that is contained in the text messages, making the texts themselves cumulative. Therefore, to the extent there is any probative value in these text messages, they are cumulative and the prejudice outweighs any probative value.

    4.      Boone's texts to "Dad" on September 25, 2017 (bb).

The government intends to offer the following text messages between Boone and Dad on September 25, 2017:

> **Boone:** Hays, a guy involved in the [L.H.] incident, got a call tonight from the association saying to call Brian Millikan tomorrow so they can get out in front of this . . . . . why would they not call me and give me a heads up too??? My actions were not the same as Hays and [another officer][8] but still. Nobody knows if they called [another officer][9] cuz Manley told him to leave tonight, I'll tell u more about that later!
>
> **Boone:** I also don't wanna day "hey I was involved too!" If they don't seem to think anything of my end of it all? Or does that not matter?

(Doc 277 at 27-28.) The government argues that Boone's texts are an indirect admission.

Boone's texts are inadmissible. These text messages contain allegations of wrongdoing by Hays and an unidentified third person. It is a stretch to say that they contain admissions by Boone. The texts are unduly prejudicial where they allege that "another officer," whose name is redacted, has somehow acted badly. The redaction, particularly where it is done in this manner, causes the jury to speculate about the identity of this other officer. Additionally, to the extent that these texts can be read as evidencing Boone's involvement with L.H.'s arrest, they are cumulative as to that point. Other evidence will be offered at trial to show Boone's presence at the scene. This evidence

---

[8] The government included this redaction.
[9] The government included this redaction.

7

only vaguely, at best, contributes to that allegation and it is unduly prejudicial and cumulative.

> **B.    The text messages are not relevant and any relevance is substantially outweighed by the danger of unfair prejudice.**

The following text messages are unduly prejudicial and should be excluded from trial.

1.    Myers' texts on September 16, 2017 (k).

The government intends to offer the following text messages to and from Myers and "Truesdale" on September 16, 2017 "to provide context in which the charged crimes occurred" and to show Myers "is not stressed by the protests." (Doc. 277 at 14.)

**Truesdale:** Hot shots Fenton

**Truesdale:** ?

**Myers:** Are u kidding me I'm fucking fighting protestors.

**Truesdale:** Im guessing my attempt at humour was wrong time, wro g olace?

**Myers:** No if it was humor u know I do have to wonder to ensure u weren't that absent minded lol

**Myers:** Love you by the way

**Truesdale:** Lol. I can tell this is a very stressful time. Be safe man. Beers on me when its over.

**Myers:** I'm fucking with u, I'm not stressed bro lmao.

These text messages are irrelevant and inadmissible. Whether or not Myers is stressed is irrelevant. The issue for trial is whether or not the seizure of L.H. was reasonable, and the subjective emotions of one of the alleged arresting officers is not

8

relevant to this inquiry. The entire text message chain from section k of the government's motion should be excluded as irrelevant.

Even if Myers' statement that he is not stressed is relevant, which Defendant does not concede, Myers' statement that he is "fighting protestors" is not probative of his stress level, which is the proffered reason for the admissibility of the text messages. (Doc. 277 at 14.) This statement, which is given without any context, is unduly prejudicial and that prejudice outweighs any possible probative value the statement may have. At the very least, the statement regarding "fighting protestors" should be excluded.

2. Texts regarding other incidents (l, ee, ff, gg).

The government has listed text messages to or from Boone and Myers regarding incidents that took place at other times and other places remote from the time and place of the arrest at issue here. These text messages are not admissible.

On September 16, 2017, Boone exchanged the following text messages with Ashley Marie:

> **Boone:** Just deployed to U city . . . . . u will see the REAL POLICE come in and clear these fuckers REAL QUICK. We ain't fuckin w them tonight.
>
> **Ashley Marie**: Some black guy in wife beater and yellow bandana bout to GET IT! Asking these cops if they have kids
>
> **Boone**: They r gonna be fucked when we pull up. I bet they get out pretty quick. Watch, first thing that is happening is SWAT shooting them w sock rounds and pepper balls.

(Doc. 277 at 15-16.) The government argues that these text messages are probative of Boone's "attitude towards the protesters and his intent to assault protesters." (*Id.* at 15.)

On November 17, 2017, Boone texted the following to Tim Strain:

9

>**Boone:** Yep, Mother fuckers. Dude got caught in a dead end gangway tho . . . . . he was crying and bloody for making me fucking run that far. Thanks buddy. U good?

(*Id.* at 30.) On the same day, he texted the following to Ashley Marie:

>**Boone:** We just chased a car for a shooting, got all 4 shit heads and the gun, but I had to run forever again and feel like shit right now. Can't breathe. But dude got GOT in a dead end gangway by me and he is NOT in good shape now.

(*Id.* at 30.) The government argues that these texts are "probative of Boone's state of mind with respect to apprehending suspects" and would be admissible to show his motive and intent to assault suspects and that his actions were not the result of mistake. (*Id.*)

On November 19, 2017, Myers texted the following to a group of officers, one of whose name has been redacted. (*Id.* at 31.)

>**Myers:** We had actually disengaged our following when we witnessed the crash and at that point we activated our equipment to check on the officer and try to fuck up the bad guy

(*Id.*) The government argues that this probative of Myers' state of mind with respect to apprehending suspects and shows his motive and intent to assault suspects. (*Id.* at 30.)

On May 2, 2018 Myers exchanged the following texts with Edin Kurtovich:

>**Edin:** We brought in 3 bodies last night but we threw Kori 2 felonies for this prob and then we got a tampering
>
>**Myers:** Good stuff bud
>
>**Edin:** Appreciate it boss. I about broke my fucking hand on a dude 2 nights ago
>
>**Myers:** Haha employee injury report
>
>**Edin:** He turned his head after I popped him a couple times and I punched him in the back of the head and my hand swelled up right away lol
>
>**Myers:** Haha, the joys of nightwatch

10

> **Edin:** I think that's the last time I just bare knuckle punch someone because my hand hurts.
>
> **Myers:** yea but it's fun

(*Id.* at 31-32). On May 22, 2018, Myers and Kurtovich exchanged the following texts:

> **Edin:** You should be proud of your boys. Only reason the 4th caught those car jackets cause [another officer][10] ran one down and I ran down the other, 4th lost the 3rd one
>
> **Myers:** Really, so ur good for more than just quoting RSMO's on fb huh?
>
> **Myers:** Lol
>
> **Edin:** Hahahaha I said be proud bitch
>
> **Myers**: I am proud of you guys that's why I give you shit. U know I respect the work u guys do
>
> **Myers:** Just gotta drop the hammer on you when u talk shit
>
> **Myers:** Bitch
>
> **Edin:** I'm a young aspiring chris Myers
>
> **Myers:** Lol
>
> **Myers:** Oh god . . . said no one ever
>
> **Edin:** Hit the 14 year old so hard with my pistol across his face it flew out of my hand lol
>
> **Myers:** Stick with me and I'll take you to the top
>
> **Myers:** Damn bro, he was 14!
>
> **Edin**: Yeah lol and [another officer][11] caught the driver who's 19
>
> **Myers:** He just needed a stern talking too, a friendly example of a policemen who could be a positive figure to Jim and bridge the gap between young minority males and police . . .

---

[10] The government included this redaction.
[11] The government included this redaction.

11

>    **Myers:** *him* not Jim
>
>    **Edin:** Lmao yeah. Even [the] liberal [officer][12] beat the shit out of his guy with his flashlight lol
>
>    **Myers:** Haha

(*Id.* at 32-33). The government argues these texts are probative of Myers' state of mind and admissible to show his motive and intent to assault suspects and lack of mistake.

None of these text messages are admissible. They all involve incidents that occurred at different times and places from the event charged in the indictment. The text messages between Edin Kurtovich and Myers do not even involve any actions by Myers or any other defendant and they involve arrests that took place 7 months after the arrest of L.H. These texts are not probative to any fact that is at issue here. They appear to be offered solely as impermissible character evidence.

    3.       Texts regarding protesters (a-h, j, m, r, t, w).

The government has listed additional text messages to or from Boone and Myers regarding protesters in general. These text messages should be excluded because any slight probative value they offer is substantially outweighed by unfair prejudice. These text messages include the texts in the following alphabetical sections from the government's notice of intent (Doc. 277): a-h, j, m, r, t, w.

For example, on September 14, 2017, Boone texted several other officers, "Yep 9am to practice walking in a line with a stick . . . . . until shit gets real and they realize walking in a line doesn't work as well as swinging the stick!" (*Id.* at 8.) On September

---

[12] The government included this redaction.

15, 2017 Myers texted Michael Hines, ". . . let's whoop some ass." (*Id.* at 9.) On September 15, 2017 Boone texted Andrew Ditto, ". . . .[b]ut its gonna be a lot of fun beating the hell out of these shitheads once the sun goes down and nobody can tell us apart!!!!" (*Id.* at 11.) On September 17, 2017 Boone texted Gavin, "[a] lot of cops getting hurt, but it's still a blast beating people that deserve it. And I'm not one of the people hurt, so I'm still enjoying each night." (*Id.* at 16.)

To the extent these text messages have any probative value, they are unduly prejudicial and should be excluded from trial. These text messages contain inflammatory and derogatory statements about protesters and appear to be aimed at convincing the jury that the defendants have a proclivity for harming protesters. Additionally, this trial is taking place amid a pervasive societal narrative that law enforcement is antagonistic to protesters in general. Although Korte is not mentioned in, or a party to, the text messages the government intends to introduce, he will be sitting at a defense table with the authors of the texts, and he wears the same uniform and works for the same department as they do. Accordingly, the language used in codefendants' texts, coupled with the narrative regarding antagonism between police and protesters, indicates to the jury that all officers have these opinions and encourages the jury to make a decision regarding defendants' guilt or innocence based on emotion rather than the facts of the case. These text messages encourage the jury to make a finding of guilt on an improper basis—Korte's mere status as a police officer—rather than the facts of the case, and they should be excluded.

The text messages are not properly admissible under Rule 404(b), which provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

13

with the character." FRE 404(b)(1). The text messages that the government intends to offer at trial consist of improper character evidence. The evidence is calculated to give the jury the impression that the officers in the text messages, and, by implication, all of their fellow officers, like Korte, have a general intent to harass and harm protesters.

   4.  The redactions do not comply with *Bruton*.[13]

Additionally, the redactions made by the government do not comply with *Bruton*. The introduction of "incriminating extrajudicial statements" by a non-testifying co-defendant "violate[s] [the defendant's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton v. United States*, 391 U.S. 123, 126 (1968). The Confrontation Clause of the Sixth Amendment gives a criminal defendant the right to cross-examine witnesses against him. *See* U.S. Const., amend. 6. The Confrontation Clause applies to "testimonial statements, such as prior testimony at a preliminary hearing, former trial, or before a grand jury and statements made in the course of police interrogations." *United States v. Garth*, 540 F.3d 766, 778 (8th Cir. 2008) (*citing Crawford v. Washington*, 541 U.S. 36, 68 (2004)) (emphasis added). In *Bruton*, the Supreme Court ruled that—in a joint trial—the admission of a co-defendant's confession, which implicated the appellant, was error where the co-defendant did not testify and thus was not subject to cross-examination by the appellant. *Bruton*, 391 U.S. at 135-37. The Court further held that, even though a limiting instruction was given that the jury should not consider the confession as to the appellant, "in the context of a joint

---

[13] The redactions are different than, and raise a substantially distinct *Bruton* issue than, those addressed in Defendant Korte's prior severance motion, and Defendant Korte therefore plans to file a renewed motion to sever on the same date as the instant Motion in Limine to squarely the changed circumstances, in the event that the text messages at issue are not excluded.

trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." *Id.* at 137.

It is true that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (footnote omitted). However, in a later case, the Supreme Court held that notwithstanding cautionary instructions and neutral redactions, *Bruton* is violated when the fact that a statement has been redacted is so obvious as to lead the jury through ordinary inferences directly to a defendant. *See Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("[W]e believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results.") In fact, the Supreme Court noted that the obvious indication of alteration is accusatory. *Gray*, 523 U.S. at 194; *see also United States v. Donahue*, 948 F.2d 438, 444 (8th Cir. 1991) (citing *United States v. Long*, 900 F.2d 1270, 1280 (8th Cir. 1990)) (there can be "no improper linkage between the statement and [the defendant], nor . . . an impermissible invitation to speculate").

Here, the redactions are accusatory. It is obvious from the text messages that someone's name has been redacted and that person was a male police officer (like Boone's two codefendants). The government redacted the names of officers who are defendants in this case and those who are not. The redactions do not comply with the

15

requirements in *Bruton* where the redaction is so obvious as to lead the jury through ordinary inferences directly to a defendant.

### III.     CONCLUSION

The text messages offered by the government are irrelevant and unfairly prejudicial and they should be excluded.

Dated: February 22, 2021                                Respectfully submitted,

                        Rogers, Sevastianos & Bante, LLP


                        By: */s/ John P. Rogers*
                           JOHN P. ROGERS, #38743MO
                           Attorney for Defendant Korte
                           120 S. Central Avenue, Suite 160
                           Clayton, Missouri 63105
                           (314) 354-8484
                           Facsimile 354-8271
                           jrogers@rsblawfirm.com


### **CERTIFICATE OF SERVICE**

By signature below, I hereby certify that on February 22, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorneys Carrie Constantin and Robert Livergood.

                           /s/ John P. Rogers